2041

Margaret BROCKINGTON, As Guardian ad Litem for Jefford C. Brockington, Respondent v. PEE DEE MENTAL HEALTH CENTER and South Carolina Department of Mental Health, Appellants.

(433 S.E. (2d) 16)

Court of Appeals

*John S. Wilkerson, III,* and *Richard L. Hinson,* of *Turner, Padget, Graham & Laney,* Florence, *for appellants.*

*J. Anthony Floyd,* Hartsville, *for respondent.*

Heard June 8, 1993; Decided July 6, 1993.

Reh. Den. July 30, 1993.

GOOLSBY, Judge:

Margaret Brockington, as guardian *ad litem* for Jefford C. Brockington, brought this negligence action on October 2, 1989, against the Pee Dee Mental Health Center and the South Carolina Department of Mental Health.[1] The jury returned a verdict against the two defendants. They appeal, among other things, the denial of their motion for a judgment notwithstanding the verdict. The dispositive issue relates to the sufficiency of the evidence to support the finding, implicit in the jury's verdict, that the defendants failed to exercise reasonable care to supervise their employee acting outside the scope of his employment as to prevent him from intentionally harming others. We reverse.

In February, 1986, shortly after being released from the State Hospital in Columbia, Jefford Brockington, a person who is borderline mentally retarded and carries a diagnosis of paranoid schizophrenia, enrolled in a therapy program at the Pee Dee Mental Health Center. The Center assigned Brockington to a program that it conducted in Hartsville at its Living Skills House. The Living Skills House is across the street from the Center's main office in Hartsville.

The Center employed Alphonso Davis, a therapeutic assistant and a former employee of the South Carolina Department of Mental Retardation and the South Carolina Department of Mental Health, to deal directly with clients enrolled in the therapy program. The Department of Mental Retardation, in response to an inquiry made by the Center, reported to the Center that Davis, a married man and father of two children,

---

[1] Early on in the lawsuit the parties stipulated that the Tort Claims Act did not apply to any acts that occurred prior to July 1, 1986. *See, however, McCall v. Batson*, 285 S.C. 243, 329 S.E. (2d) 741 (1985) (wherein the supreme court abolished governmental immunity in tort as to all causes of actions arising on or after July 1, 1986, and in those cases then pending or filed before July 1, 1986, if the defendant had liability insurance); *Brabham v. City of Columbia*, 293 S.C. 266, 360 S.E. (2d) 144 (1987) (indicating the doctrine of sovereign immunity had no application where an action against a governmental entity arose between April 18, 1985, and July 1, 1986, and the governmental entity sued in tort had liability insurance and indicating liability would be limited to the amount of insurance); *see also* S.C. CODE ANN. § 15-78-20(c)(i) (Supp. 1992) (reinstating sovereign immunity for all actions accruing prior to the effective date of the South Carolina Tort Claims Act except where the governmental entity maintained liability insurance coverage).

rated "good" as regards his "ability," his "attitude toward work," and his "habit[s] and traits of character." It also advised that Davis had never been suspected of improper conduct and that if circumstances permitted, it would rehire Davis.

Davis performed his duties at the Living Skills House without on-site supervision. His formal supervision consisted of a once-a-week "treatment team staffing," a fifty-day progress review, a ninety-day progress review, a once-a-month office meeting, and direct supervision one hour a week by the Hartsville manager in her office. He scored well on his employee evaluation, which his supervisor prepared after March 17, 1986, regarding his ability to work without supervision. He also impressed his supervisor as being "dependable" and "responsible."

On Brockington's first visit to the therapy program, Davis invited Brockington into his office. Davis asked him some questions and then asked Brockington to unzip his pants. Davis came from behind his desk, reached inside Brockington's trousers and removed Brockington's penis, and began performing oral sex on Brockington. Brockington, however, pushed him away and would not allow him to continue. About a week later, Davis sexually assaulted Brockington again.

Brockington told neither the police nor mental health supervisory personnel of Davis' sexual assaults. He told only his mother and his brother. His mother, who did not believe him at first, simply advised Brockington to get a lawyer. She did not complain to anyone at the Center about Davis' behavior, not to the psychiatrist nor to the nurses nor to Davis' coworkers nor to the manager. His brother also failed to complain.

Davis continued to bother Brockington by rubbing or brushing up against him, by attempting to touch him, or by asking Brockington to have anal sex with him.

Several months later, however, the mother of another client reported to the Center's Hartsville manager that Davis had acted inappropriately toward her son. The manager immediately relayed these allegations to the Center's executive director. He, in turn, requested an internal investigation into the allegations and had Davis barred from having direct contact with clients. Shortly afterward, he transferred Davis to Florence.

After the Department completed its internal investigation, the Department terminated Davis and turned the results of its investigation over to the circuit solicitor. Davis later pled guilty to several counts of sexual assault and battery and received a three-year prison sentence.

Brockington's amended complaint alleges two causes of action: one based on *respondeat superior* and the other based on negligent supervision.

The jury found in favor of the defendants on the *respondeat superior* cause of action but found in favor of Brockington on the negligent supervision cause of action. The trial judge denied the defendant's posttrial motions and awarded costs to Brockington.

This appeal followed.

## I.

Our Supreme Court recently addressed the duty of an employer to control the conduct of an employee acting outside the scope of his employment. In *Degenhart v. Knights of Columbus*, — S.C. —, —, 420 S.E. (2d) 495, 496 (1992), the court, relying on the Restatement (Second) of Torts § 317, at 125 (1965), held:

> An employer may be liable for negligent supervision if the employee intentionally harms another when . . . :
> [(a) the employee]
> (i) is upon the premises in possession of the [employer] or upon which the [employee] is privileged to enter only as his [employee], or (ii) is using a chattel of [the employer], and
> [(b) the employer]
> (i) knows or has reason to know that he has the ability to control his [employee], and (ii) knows or should know of the necessity and opportunity for exercising such control.

Our focus here is upon the last element. Did the defendants know or should they have known of the necessity to exercise control over Davis? When viewed in the light most favorable to Brockington, the evidence and its reasonable inferences do not support the finding, implicit in the jury's verdict, that the defendants knew or should have known of this necessity.

Brockington presented no evidence that the defendants had any knowledge whatever that Davis had sexually assaulted Brockington. Moreover, nothing that the defendants gathered from Davis, co-workers at the Hartsville office, or elsewhere about either Davis' personal history or his work activities alerted the defendants that Davis would engage in predatory homosexual activity or other inappropriate sexual conduct with clients and with Brockington in particular. Brockington, his mother, and his brother, however, learned that he would do so, but they kept this knowledge to themselves. Indeed, they allowed matters to continue unabated until someone else, eight months after Davis' first assault on Brockington, complained to the defendants about Davis.

The only reasonable inference to be drawn from the evidence is that the defendants exercised reasonable care to control their employee while acting outside the scope of his employment so as to prevent him from intentionally harming others once they knew or should have known of the necessity to control him. Immediately upon receiving allegations of Davis' sexual misconduct, they isolated Davis from their clients and launched an investigation. The investigation led to Davis' termination from employment as well as to his prosecution, conviction, and sentence for sexual offenses.

Brockington contends, however, the defendants assumed the duty to supervise their employees when the Department adopted the internal directives contained in its "Quality Assurance Plan and Manual for Community Mental Health Centers." Any duty the defendants owed Brockington arising out of these directives would be limited to an obligation to use due care in supervising Davis' actions undertaken in his capacity as an agent of the defendants. *Degenhart,* — S.C. at —, 420 S.E. (2d) at 497. Clearly, Davis was acting in his individual capacity and not as an agent for the defendants when he sexually assaulted Brockington. Indeed, the jury so found. Accordingly, we conclude the defendants possessed no duty arising out of the internal directives to protect Brockington from unreasonable risks resulting from his relationship with Davis in Davis' individual capacity.

## II.

Because we reverse the judgment in Brockington's favor,

we also reverse the award of costs in his favor. *See* Rule 54(d), SCRCP ("[C]osts shall be allowed as of course to the prevailing party unless the court otherwise directs. . . ."). We do not reach the other issues raised by the defendants, including the issues relating to the statute of limitations and to the admission of certain testimony challenged as either hearsay or irrelevant.

Reversed.

SHAW and CURETON, JJ., concur.