**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

SARA A. COLLINS,
Plaintiff-Appellant,

v.

BANKERS LIFE AND CASUALTY
COMPANY,

No. 98-1494

Defendant-Appellee,

and

BANKER'S MULTIPLE LINE INSURANCE
COMPANY,
Defendant.

Appeal from the United States District Court
for the District of South Carolina, at Florence.
Cameron McGowan Currie, District Judge.
(CA-96-2199-4-22BE)

Argued: June 7, 1999

Decided: September 15, 1999

Before MURNAGHAN, NIEMEYER, and LUTTIG, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** David Eugene Massey, FEDOR, MASSEY, WHITLARK
& BALLOU, Columbia, South Carolina, for Appellant. Susan Pedrick

McWilliams, NEXSEN, PRUET, JACOBS & POLLARD, L.L.P., Columbia, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

This appeal requires us to determine whether Sara A. Collins produced sufficient evidence to support her common law claims under South Carolina law that her employer, Bankers Life & Casualty Company, intentionally inflicted emotional distress upon her and negligently supervised her immediate superior who subjected her to sexual advances. The district court entered summary judgment against her, concluding that her evidence was insufficient as a matter of law. We affirm.

I

In December 1984, Sara Collins began working as a sales agent for Bankers Life & Casualty Company ("Bankers Life") in Florence, South Carolina, and, over the next seven years, she assumed a number of managerial positions. In January 1994, while Collins was working as a sales agent, Bankers Life hired Billy Mills to manage its Florence office.

Collins alleged that after Mills arrived, he began to subject her to "numerous sexual advances, sexual harassment, including assaultive conduct, and an abusive hostile environment," which continued through early 1994. In particular, she claimed that Mills made a number of lewd and profanely indecent comments to her and that he simulated masturbation in her presence. She also asserted that Mills assaulted her:

2

> [H]e would drop by my house uninvited. . . . He told me that if I didn't let him in he would write me up for having a poor attitude and terminate me. . . . He -- when I opened the door he pushed me into the corner of the door frame and the wall and he told me that if I didn't keep my mouth shut-- . . . that he just wanted to kill somebody.

Collins alleged that after she rebuffed Mills' advances, Mills retaliated against her by refusing to approve her sales and by "nit-pick[ing]" at her work. Nevertheless, because she "wanted to give the man the benefit of the doubt," Collins stated that she chose not to report Mills' alleged wrongdoings to Bankers Life at that time. Somewhat in contradiction, however, she claimed that in January 1994 she notified Gary Wells, a vice president and regional manager, about Mills' alleged verbal harassment. Wells denied having received any complaint from Collins before June 1994. At that time, he responded by relieving Collins of any responsibility of working with Mills and by admonishing Mills to avoid further contact with Collins.

Collins suffered mental and physical distress, and in accordance with the instruction of her psychiatrist, she stopped working in May 1994. After she ultimately failed to return to work, Bankers Life terminated her employment.

In the summer of 1996, about two years after her termination, Collins commenced this action against both Bankers Life and its insurer in the Court of Common Pleas in Florence County, South Carolina, alleging (1) intentional infliction of emotional distress; (2) breach of contract; (3) violation of public policy; (4) assault and battery; (5) invasion of privacy; (6) negligence; (7) violation of civil rights; and (8) violation of Title VII. After removing the action to federal court, the insurance company filed a motion for summary judgment on all of Collins' claims, which the district court granted. Thereafter, Bankers Life also filed a motion for summary judgment.

In granting Bankers Life's motions, the district court determined that Collins waived her breach of contract, assault and battery, and civil rights claims by not addressing them in response to Bankers Life's motion for summary judgment. The court dismissed her Title VII claim because she was an independent contractor and not an

3

employee of Bankers Life. And as to the intentional infliction and negligent supervision claims -- which are the subject of this appeal -- the court held that Bankers Life could not be held vicariously liable for Mills' alleged intentional infliction of emotional distress because Bankers Life did nothing to ratify Mills' conduct. The court also held that Collins could not pursue a recovery for Bankers Life's negligent supervision of Mills because that cause of action, under South Carolina law, is predicated upon "establishing the employee's [here Mills'] commission of an underlying tortious act." Because the court dismissed Collins' Title VII claim and all of her other state law claims, Collins was precluded, as a matter of law, from demonstrating that Mills committed an independent legal wrong for which Bankers Life could be responsible. This appeal followed.

II

To succeed on a cause of action for the intentional infliction of emotional distress under South Carolina law, a plaintiff must demonstrate (1) that the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from its conduct; (2) that its conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community; and (3) that its acts caused severe emotional distress that no reasonable person could be expected to endure. See Ford v. Hutson, 276 S.E.2d 776, 778 (S.C. 1981) (citations omitted). Even though Mills' alleged wrongdoings undoubtedly fell outside the scope of his employment, Bankers Life could nonetheless be held liable for them upon a showing of express or implied ratification. See Lincoln v. Aetna Cas. & Sur. Co., 386 S.E.2d 801, 803 (S.C. Ct. App. 1989). Specifically, Collins would have to demonstrate that Bankers Life, with full knowledge of Mills' conduct, affirmatively acquiesced in or accepted benefits flowing from that conduct. See id.

Collins argues that Bankers Life ratified Mills' conduct by failing to respond to her alleged January 1994 complaint of Mills' verbal harassment. She posits that "Bankers Life did not perform a reasonable investigation" into her complaints, which in turn resulted in its saving time and money, and that "Mr. Wells never gave [her] the opportunity to explain her complaint."

4

While we recognize that the parties dispute the question of <u>when</u> Collins first notified Bankers Life of Mills' transgressions, we nevertheless conclude that Collins has not proffered sufficient evidence to support a claim that Bankers Life is liable for the intentional infliction of emotional distress. The record contains no evidence demonstrating that Bankers Life ratified Mills' alleged wrongful conduct. As the district court reasoned:

> [T]he record is wholly devoid of any evidence that [Bankers Life] accepted the benefits of Mills' harassment or that [Bankers Life] made an affirmative decision to adopt the harassment. Rather, the record is uncontradicted that Mr. Wells simply chose to disbelieve [Collins'] account of harassment, crediting the fact that Mills was a religious man married to the same woman for a number of years. Even if Wells was woefully mistaken in his assessment of Mills' character, that may show poor judgment but it does not prove affirmative adoption of the [alleged] illegal conduct.

We agree and therefore conclude that the district court properly granted Bankers Life's motion for summary judgment on Collins' intentional infliction of emotional distress claim.

III

Collins also contends that Bankers Life negligently failed to supervise Mills. Collins asserts that Mills' simulation of "masturbation and verbal threats to force sexual relations [with her]" constituted an assault and that Bankers Life could have prevented that assault absent its negligent supervision of Mills.

Under South Carolina law, an employer is obliged, in certain circumstances, to exercise reasonable care to control an employee acting outside the scope of his employment. <u>See Degenhart v. Knights of Columbus</u>, 420 S.E.2d 495, 496 (S.C. 1992). Breach of that duty gives rise to negligent supervision liability if the plaintiff is able to show that an employee intentionally harmed another when the employee: "(1) [was] upon the premises of the employer, or [was] using a chattel of the employer, (2) the employer [knew] or[had] reason to know that he [had] the ability to control his employee, and (3) the employer

5

[knew] or should [have known] of the necessity and opportunity for exercising such control." Moore v. Berkeley County Sch. Dist., 486 S.E.2d 9, 12 (S.C. Ct. App. 1997) (citing Degenhart, 420 S.E.2d at 496); see also Brockington v. Pee Dee Mental Health Ctr., 433 S.E.2d 16, 18 (S.C. Ct. App. 1993). In Moore, for instance, a middle school student sought to hold a school district liable for negligently supervising his summer school teacher, who engaged in sexual activity with him at her home. The court entered judgment for the school district after determining that no evidence demonstrated that it knew or should have known of the necessity to exercise preventative control over the teacher. Id. at 13; cf. Doe v. Greenville Hosp. Sys., 448 S.E.2d 564 (S.C. Ct. App. 1994) (holding that an employer's notice of one of its employee's prior sexual assaultive conduct was sufficient to result in the imposition of negligent supervision liability against the employer).

Viewed in the light most favorable to Collins, the record does not support her assertion that the district court erred in granting Bankers Life's motion for summary judgment. Appalling as Mills' conduct may have been, there is no indication that his simulation of masturbation placed Collins in fear of bodily harm. See Herring v. Lawrence Warehouse Co., 72 S.E.2d 453, 458 (S.C. 1952) (defining civil assault as conduct that causes another to reasonably fear the infliction of bodily harm). Collins has nowhere suggested that she feared for her safety while Mills engaged in such conduct, even though the conduct was crass and improper.

In addition, the record contains no evidence demonstrating that Collins notified Bankers Life that Mills had physically assaulted her. According to her claim, in January 1994, Collins notified Bankers Life that Mills had made several suggestive and indecent verbal remarks to her. Significantly, however, and by Collins' own admission, Mills' alleged verbal harassment is not the conduct that underlies her negligent supervision claim. Nor do we believe that Bankers Life could have reasonably anticipated, based upon an allegation of verbal harassment, that Mills would proceed to physically assault Collins. See Moore, 486 S.E.2d at 13 ("Whether or not [principal] Hilson adequately monitored [teacher] Steward's classroom is of no significance, inasmuch as none of the alleged classroom incidents were of such a character that the administration would have, if aware of them,

6

reasonably anticipated that Steward would engage in sexual inter-course with a student in her own home after school hours"). Accordingly, absent any evidence demonstrating that it received notice that Mills engaged in assaultive or similar conduct toward Collins, Bankers Life cannot, as a matter of law, be held liable for negligently supervising Mills. See Brockington, 433 S.E.2d at 18.

Accordingly, the judgment of the district court is

AFFIRMED.

7