**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

BALCOR EQUITY PROPERTIES XVIII,
*Plaintiff-Appellee,*

v.

CALIGO LIMITED,
*Defendant-Appellant.*

No. 99-1568

BALCOR EQUITY PROPERTIES XVIII,
*Plaintiff-Appellant,*

v.

CALIGO LIMITED,
*Defendant-Appellee.*

No. 99-1604

Appeals from the United States District Court
for the District of South Carolina, at Greenville.
Henry M. Herlong, Jr., District Judge.
(CA-97-1494-6-20)

Argued: October 31, 2000

Decided: December 19, 2000

Before WIDENER, WILKINS, and LUTTIG, Circuit Judges.

Affirmed in part, reversed in part, and remanded by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** W. Howard Boyd, Jr., GIBBES, GALLIVAN, WHITE & BOYD, P.A., Greenville, South Carolina, for Appellant. James William Logan, Jr., LOGAN, JOLLY & SMITH, L.L.P., Anderson, South Carolina, for Appellee. **ON BRIEF:** Luanne Lambert Runge, GIBBES, GALLIVAN, WHITE & BOYD, P.A., Greenville, South Carolina, for Appellant. Michael T. Smith, LOGAN, JOLLY & SMITH, L.L.P., Anderson, South Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Caligo Limited (Caligo) appeals, and Balcor Equity Properties XVIII (Balcor) cross-appeals. The district court granted summary judgment to Balcor on Balcor's indemnification claim against Caligo arising out of a July 4, 1994 fire and granted summary judgment to Caligo on Balcor's remaining claims. We affirm in part, reverse in part, and remand.

### I.

In early June 1994, Caligo began an industrial cleaning project in Greer, South Carolina. Caligo staffed the project in part with employees from outside the Greer area and housed these employees in apartments leased from Balcor. Caligo rented and signed leases for several apartment units, including Units 161 and 166.

The form leases signed by Caligo stated in pertinent part:

> 2.    PREMISES.  IN CONSIDERATION of the promises and  agreements  contained  in  this  Lease,  We  are  hereby

pleased to lease You and You hereby agree to lease from Us the apartment unit described in Item 4 on the reverse side (together with the existing fixtures, carpeting, draperies and appliances and any household furniture and furnishings provided by Us), this apartment unit together with any such contents provided by Us is hereafter called the "Premises."

. . .

10. DAMAGE AND LOSS. . . . You agree to carry insurance covering all Your property located in the Premises and to indemnify Us from any damage or loss We may sustain because of any fire or the extinguishing of such *fire originating in the Premises* which damages Our Property.

J.A. 2056, 2062 (emphasis added). The terms "fire" and "originating" were not defined in the lease.

During the evening of July 4, some Caligo employees residing in Units 161 and 166 were discharging fireworks onto the ground from their outside balconies. The employees subsequently began shooting bottle rocket and Roman Candle fireworks at each other. Shortly afterward, the wooden deck of Unit 164—which was not leased by Caligo but which was situated between Units 161 and 166—caught on fire, and the resulting blaze caused more than $1,000,000 in damage to the complex. The police and fire departments concluded that no criminal activity had occurred since shooting the fireworks within the city limits was lawful and the fire was accidental. Although investigators could not determine who discharged the firework that caused the fire, the parties stipulated that it was one of the Caligo employees residing in Unit 161 or 166.

Balcor had purchased fire insurance coverage for the apartment complex from four different carriers. After the fire, the carriers jointly paid Balcor $991,796.41, which represented Balcor's claimed damages less its $100,000 deductible. Balcor then instituted this action, claiming that Caligo was liable for the conduct of its employees in discharging the fireworks and seeking to recover damages in the full amount of the loss caused by the fire. Balcor alleged, *inter alia*, breach of contract, negligent supervision, and negligent retention.

One claim within the breach of contract action was that Paragraph 10 of the lease entitled Balcor to indemnification for its loss. Caligo generally denied Balcor's claims and also asserted, as is relevant here, that the action was barred by S.C. Code Ann. § 38-75-60 (Law. Co-op. 1989), which precludes suits by insurers against tenants for damage to leased real or personal property unless the damage is caused intentionally or recklessly.

Caligo moved to join Balcor's insurance carriers as involuntary plaintiffs. *See* Fed. R. Civ. P. 19(a). After the carriers stipulated that they would be bound by the judgment, the district court denied the joinder motion. The district court also struck Caligo's § 38-75-60 defense, ruling that the statute did not apply to Balcor's suit.

The parties filed cross-motions for summary judgment. Following a hearing, the court granted judgment in favor of Balcor on its claim based upon Paragraph 10 of the lease, concluding that Caligo had a contractual duty to indemnify Balcor for the fire damage because, as a matter of law, the fire originated in premises leased by Caligo, in either Unit 161 or 166. The district court granted summary judgment for Caligo on Balcor's claims of negligent supervision and negligent retention, reasoning that as a matter of law Caligo's employees did not intentionally harm Balcor as would be required to prove those causes of action.

Caligo appeals, contending that the district court erred in granting summary judgment to Balcor regarding Paragraph 10, in denying its motion to join Balcor's insurance carriers as involuntary plaintiffs, and in striking its statutory defense. Balcor cross-appeals, maintaining that the court erred in granting summary judgment against it on its negligent supervision and negligent retention claims.

## II.

### A.

Caligo argues that the district court erred in granting Balcor's motion for summary judgment on Balcor's breach of contract cause of action based upon the provisions of Paragraph 10 of the lease. We agree.

Summary judgment is proper if, viewed in the light most favorable to the nonmoving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). We review an order granting summary judgment de novo. *See Figgie Int'l, Inc. v. Destileria Serralles, Inc.*, 190 F.3d 252, 255 (4th Cir. 1999).

In this diversity action, South Carolina contract law controls. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). Under South Carolina law, words in a contract are given their usual and ordinary meaning unless they are technical terms or the context requires a different meaning. *See Blakeley v. Rabon*, 221 S.E.2d 767, 769 (S.C. 1976). If a lease is subject to two reasonable constructions, the one more favorable to the lessee must be adopted, particularly when the lessor prepared the lease. *See Skull Creek Club Ltd. P'ship v. Cook & Book, Inc.*, 437 S.E.2d 163, 165 (S.C. Ct. App. 1993).

Assuming *arguendo* that the lease is ambiguous, clearly one reasonable construction of the lease is that the fire causing Balcor's loss was not a "fire originating" on the premises leased by Caligo. In the context of Paragraph 10, a paragraph pertaining to fire damage to an apartment complex, the most natural meaning to be given to "fire" is a "destructive burning, as of a building." *Funk & Wagnalls Standard Dictionary* 291 (1983). And, the most natural meaning of "originating" in this context is "com[ing] into existence."[1] *Id.* at 557. Because the apartment building did not begin to burn on Caligo's premises, a

---

[1]"Originate" has both a transitive meaning—"[t]o *bring* into existence; create; initiate"—and an intransitive meaning—"[t]o *come* into existence; arise." *Id.* at 557 (emphasis added). Although the district court apparently applied the transitive meaning, the lease would appear to contemplate the intransitive meaning as it refers to the fire itself originating rather than something originating the fire. In the context of this case, contrary to Balcor's assertion that the fire originated on the balcony where the match was struck that lit the fuse to the firework that eventually caught Unit 164 on fire, the fire actually originated on the balcony of Unit 164, where the building first began to burn.

reasonable construction of the lease is that the fire causing the damage did not originate on Caligo's premises. We therefore conclude that the district court erred in granting summary judgment to Balcor.[2]

B.

Caligo also maintains that the district court erred in holding that S.C. Code Ann. § 38-75-60 did not bar Balcor's action. Section 38-75-60 provides:

> Notwithstanding any other provision of law, no *insurer* has a cause of action against a tenant who causes damage to real or personal property leased by the landlord to the tenant when the insurer is liable to the landlord for the damages under an insurance contract between the landlord and the insurer, unless the damage is caused by the tenant intentionally or in reckless disregard of the rights of others.

S.C. Code Ann. § 38-75-60 (emphasis added). Caligo maintains that the district court erred in failing to join the insurance carriers as involuntary plaintiffs and, regardless of the identity of the named plaintiff, "the district court erred in failing to apply this statute by ignoring that this is a subrogation action against a tenant brought by a landlord's insurers." Brief of Appellant/Cross-Appellee at 23.

Our function in this diversity case is to determine how the South Carolina Supreme Court would decide this issue. *See Doe v. Doe*, 973 F.2d 237, 240 (4th Cir. 1992). When a statute is clear and ambiguous, South Carolina courts give the statute its literal meaning. *See Jones v. S.C. State Highway Dep't*, 146 S.E.2d 166, 168 (S.C. 1966).

Section 38-75-60 is no defense against Balcor's claims because the statute unambiguously applies only to an insurer's cause of action

---

[2]Because we reverse the grant of summary judgment on this basis, we do not address Caligo's alternative argument that summary judgment for Balcor was inappropriate because the lease obligated Caligo to reimburse Balcor for damage from fires originating on Caligo's premises only when the damage was caused by Caligo's lack of due care.

against a tenant.[3] Indeed, had the South Carolina legislature intended the statute to apply to landlords' causes of action, the statute no doubt would have stated, "no landlord or insurer has a cause of action" instead of simply, "no insurer has a cause of action." Accordingly, we reject Caligo's contention that the statute is a defense to Balcor's cause of action.[4]

### III.

On cross-appeal, Balcor maintains that the district court erred in granting summary judgment to Caligo on Balcor's negligent supervision and negligent retention claims. We disagree.

Generally, a person has no duty to protect another from harm inflicted by a third person. *See Rayfield v. S.C. Dep't of Corr.*, 374 S.E.2d 910, 913 (S.C. Ct. App. 1988). In attempting to remove this case from the scope of this general rule, Balcor relies on the principle of South Carolina law that an employer may be liable for negligent

---

[3]Nor would the statute have applied to Balcor's claims had Balcor's insurance carriers been joined as involuntary plaintiffs. The statute at most would have prevented the insurance carriers from stating a claim against Caligo, but would have had no effect on Balcor's cause of action. Indeed, because we discern no prejudice to Caligo from the denial of its joinder motion, we conclude that even if the district court erred in denying the motion, any error was harmless.

[4]*Vaughn v. A. E. Green Co.*, 287 S.E.2d 493 (S.C. 1982), on which Caligo relies, does not dictate that the statute applies to landlords' causes of action. In *Vaughn*, a landlord's insurance carriers sued the landlord's tenant in the landlord's name after settling a fire loss claim with the landlord. *See Vaughn*, 287 S.E.2d at 494. The trial court granted summary judgment to the tenant based on the conclusion that the insurer had failed to create a genuine issue of material fact concerning whether the tenant's actions were reckless. *See id.* The South Carolina Supreme Court reversed this holding, concluding that whether the tenant's conduct was reckless could not be determined at the summary judgment stage. *See id.* Having reversed the grant of summary judgment on that ground, the court did not decide—explicitly or implicitly, as Caligo contends— whether the statute would be a defense against the suit if recklessness was not proven. Because the court did not decide this issue, *Vaughn* does not justify our disregarding the plain meaning of the statute.

supervision and negligent retention if its employee, while acting outside the scope of his employment, *intentionally harms* another when (a) the employee is upon premises in possession of the employer and (b) the employer knows or has reason to know that he has the ability to control his employee, and knows or should know of the necessity and opportunity for exercising such control. *See Brockington v. Pee Dee Mental Health Ctr.*, 433 S.E.2d 16, 18 (S.C. Ct. App. 1993). In granting summary judgment on the negligence claims, the district court stated that *Brockington* "limit[s] such a cause of action to an intentional harm." J.A. 176. Balcor neither disputes that conclusion nor challenges the determination of the district court that there is no evidence from which a factfinder reasonably could conclude that the Caligo employees intended to cause any damage by their actions. Rather, Balcor argues that the harm here was intentional because the action that caused the damage, *i.e.*, the shooting of the firework, was intentional.

South Carolina negligent supervision and retention law is based upon the *Restatement (Second) of Torts*. *See Brockington*, 433 S.E.2d at 18. The *Restatement* defines "intent" to mean "that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it." *Restatement (Second) of Torts* § 8A (1965). Because Balcor does not even argue that there is evidence from which a factfinder could conclude that those shooting the fireworks intended to cause damage to the apartment complex, the district court correctly granted summary judgment to Caligo on these claims.[5]

---

[5]Balcor also contends that even if Caligo had no common law liability for its employees' actions, paragraph 6 of the lease provides a basis for liability. The relevant language states that Caligo "shall not permit the Premises to be used in any unlawful manner or in any manner that may in [Balcor's] exclusive judgment be disturbing to another resident of the Apartment Community or for any purposes which in [Balcor's] judgment may injure the reputation, safety or welfare of this Apartment Community." J.A. 2056, 2062. Balcor also maintains that even if Caligo originally had no duty to act, it voluntarily assumed a duty to do so by supervising its employees at the apartment complex. Because these arguments were raised for the first time in Balcor's reply brief, they are not properly before this court. *See Cavallo v. Star Enter.*, 100 F.3d 1150, 1152 n.2 (4th Cir. 1996).

IV.

In sum, we hold that the district court erred in concluding as a matter of law that Balcor's damages were the result of a "fire originating" on the premises leased by Caligo and therefore in granting summary judgment to Balcor on its indemnification claim; correctly ruled that S.C. Code Ann. § 38-75-60 did not apply to Balcor's claims; and correctly granted summary judgment against Balcor on its negligent supervision and negligent retention claims.

*AFFIRMED IN PART, REVERSED IN PART,*
*AND REMANDED*