505 P.2d 1265

Norman E. HOLVE and Nancy Holve, husband and wife, Plaintiffs-Appellants
and Cross-Respondents,

v.

Lawrence DRAPER and Robert Swanson,
Defendants-Respondents,

Robert Swanson, Respondent and
Cross-Appellant.

No. 11135.

Supreme Court of Idaho.

Jan. 19, 1973.

Rehearing Denied Feb. 22, 1973.

Arthur L. Smith of Albaugh, Bloem, Smith & Pike, Idaho Falls, for appellants.

Morton B. Hiller of St. Clair, St. Clair, Hiller & Benjamin, Idaho Falls, for respondent Robert Swanson.

Racine, Huntley, Herzog & Olson, Pocatello, for respondent Draper.

SHEPARD, Justice.

Draper was involved in an automobile accident with Mrs. Holve and the Holves brought suit against both Draper and Swanson. Draper was alleged to be the servant of Swanson. Draper's estate paid the Holves $8,000 in exchange for a covenant not to sue in favor of Draper. The district court granted Swanson summary judgment on the ground that the covenant not to sue in favor of a servant (Draper) necessarily released the master (Swanson) from any derivative liability for the tortious acts of his servant. We reverse and remand.

For approximately ten years preceding the accident Draper had lived in a trailer located on Swanson's farm. During that time Draper performed odd jobs on the farm and periodically acted as caretaker of the farm when Swanson was absent. On the night of the accident Swanson was vacationing in California. Draper was returning home from town and had parked his truck on the highway while collecting mail which had been delivered to Swanson's mailbox.

Plaintiff-Appellant Holve was driving her car when it struck the pick-up truck parked in her lane. She suffered severe personal injuries and she and her husband filed this action against Draper and Swanson on July 12, 1971.

Swanson filed a motion for summary judgment which the district court denied on December 22, 1971, and Swanson has filed a cross-appeal from the denial of that motion.

Draper died in late 1971 and on February 22, 1972, the Holves executed a covenant not to sue in favor of Draper's estate. Therein the Holves agreed not to pursue their cause of action against Draper in exchange for $8,000 from Draper's estate. The agreement provided that the $8,000 would constitute a credit of $10,000 against any judgment subsequently recovered by the Holves in their suit against Draper and Swanson. The agreement further provided that the Holves would indemnify Draper for any liability his estate might suffer as a result of any action brought by the Holves in connection with the February 4, 1971, accident.

Thereafter Swanson filed a second motion for summary judgment which the district court granted on April 10, 1972. The court reasoned that the covenant not to sue was in fact a release which, in effect, discharged Swanson from all further liability arising out of the February 4, 1971 accident. The Holves have appealed from that order granting summary judgment for Swanson.

■ Obviously, the main issue in this appeal is the construction and effect of the covenant between Holve and Draper. Initially we must determine what law should be applied in construing the covenant. More specifically, we must decide whether the covenant is governed by the law in effect at the time that the cause of action arose (February 4, 1971) or by the law in effect at the time the covenant was executed (February 22, 1972).

On March 24, 1971, approximately six weeks after the accident involved herein, the Idaho Legislature adopted the Uniform Contribution Among Tortfeasors Act. Rather than adopting the current version, the Idaho Legislature saw fit to adopt the 1939 version of the Uniform Act as part of Idaho's comparative negligence statute. 1971 Idaho Session Laws, Ch. 186. The enactment of that Uniform Act substantially altered the law of Idaho concerning the effect of releases and covenants not to sue. The Uniform Act had been in effect nearly eleven months by the time the covenant involved herein was executed.

We hold that the effect and interpretation of the covenant at issue herein should be considered in light of the law in effect at the time of the execution of the covenant. We are persuaded by the reasoning of the Supreme Court of Pennsylvania in the case of Smith v. Fenner, 399 Pa. 633, 161 A.2d 150 (1960). The question before the Pennsylvania court was substantially

similar to that at hand. In its unanimous opinion that court said:

"The Uniform Act changed the effect of such release, if given, but it effected no change in the cause of action nor did it increase what could have been the liability of any one or all appellees at the time the cause of action arose. None of the appellees had any vested right to be exonerated from liability at the time of securing of a release by one or the other appellees. The change effected by the Uniform Act [was one of procedure which] did not disturb any substantive right of any of appellees. *When the instant release was executed the parties knew or should have known of the provisions of the Uniform Act."* 161 A.2d at p. 155 (Emphasis supplied)

We next turn to the question of whether the master and servant can be joint tortfeasors within the meaning of the 1939 version of the Uniform Act. That Act defines joint tortfeasors as follows:

"SECTION 1.

"For the purposes of this Act, the term *'joint tortfeasors' means two or more persons jointly or severally liable in tort for the same injury to person or property,* whether or not judgment has been recovered against all or some of them." *See*: I.C. § 6–803(4).

The commissioners' comment on the above-mentioned section states:

"The common obligation contemplated by this Act is the common liability of the tortfeasors to suffer adverse judgment at the instance of the injured person, whether or not the injured person elects to impose it." Handbook of the National Conference of Commissioners on Uniform State Laws and Proceedings, p. 243 (1939).

That definition of a joint tortfeasor is exceedingly broad and goes beyond the traditional meaning of the term. One commentator has analyzed the scope of this definition as follows:

"The act does not restrict its operation to joint tort-feasors who are merely negligent or who in any other way inadvertently harm others. The act clearly is open to an interpretation that would include those responsible jointly or severally for an intentional tort. And such a construction was applied in an Arkansas case." Harper and James, I The Law of Torts, § 10.2, p. 722 (1956).

If the Act's definition includes intentional torts, then it would seem reasonable that the Act also includes vicarious liability between master and servant under the doctrine of *respondeat superior.* We further note that the scope of the Act is determined by joint or several liability rather than joint or concurring negligence. Lutz v. Boltz, 9 Terry 197, 100 A.2d 647 (Del. Supr. 1953).

Our holding herein that evidence of the master-servant relationship between Swanson and Draper is sufficient to make them joint tortfeasors within the meaning of Section 1 of the Uniform Act, i.e., I.C., § 6–803(4), is in accord with the case of Mazer v. Lipschutz, 327 F.2d 42 (3d Cir. 1963). In that case, in which the Uniform Act was also under construction, a hospital and a chief operating surgeon were both held to be joint tortfeasors.

We now turn to the common law distinction between a release and a covenant not to sue and the changes in that distinction resulting from passage of the Uniform Act. Some courts have felt that a release and a satisfaction are one and the same thing. We do not agree. As stated by Prosser in his Handbook of the Law of Torts, 3d ed.1964, pp. 268–269:

"There is a genuine distinction between a satisfaction and a release. A satisfaction is an acceptance of full compensation for the injury; a release is a surrender of the cause of action, which may be gratuitous, or given for inadequate consideration."

A release is a complete abandonment of the cause of action. The common law rule was that a release given by an injured par-

ty to one tortfeasor effectively releases all other tortfeasors from liability and bars any subsequent action against them by the injured party. The device most frequently used to circumvent this rule has been the covenant not to sue.

■ At common law a covenant not to sue is an agreement whereby an injured party promises not to assert his claim against one tortfeasor in exchange for some consideration. Unless the consideration given fully satisfied the injured parties' claim, the covenant not to sue did not release other tortfeasors from liability. The remedy for a breach of a covenent not to sue is a suit for damages based on the covenant itself. Prosser, *supra*, at page 271.

This hypertechnical distinction between a release and a covenant not to sue was eliminated by the 1939 version of the Uniform Act:

"SECTION 4.

"*A release by the injured person of one joint tortfeasor, whether before or after judgment, does not discharge the other tortfeasors unless the release so provides*; but it reduces the claim against the other tortfeasors in the amount of the consideration paid for the release, or in any amount or proportion by which the release provides that the total claim shall be reduced, if greater than the consideration paid." (Emphasis supplied)

"SECTION 5.

"A release by the injured person of one joint tortfeasor does not relieve him from liability to make contribution to another joint tortfeasor unless the release is given before the right of the other tortfeasor to secure a money judgment for contribution has accrued and provides for a reduction, to the extent of the pro rata share of the released tortfeasor, of the injured person's damages recoverable against all the other tortfeasors." *See*: I.C. §§ 6–805 and 6–806.

In Mazer v. Lipschutz, *supra*, a patient died during an operation because he re-

ceived the wrong type of blood. The decedent's administrator filed suit against the anesthesiologist and the surgeon in charge of the operation. The deceased's administrator also executed a release in favor of the hospital. Among other matters, the Court held that the release given to the hospital did not discharge the surgeon from liability because under the Uniform Act both the surgeon and the hospital were joint tortfeasors. The Court held that both the hospital (under the doctrine of *respondeat superior*) and the surgeon in charge of the operation (under Pennsylvania's Captain-of-the-Ship doctrine) were vicariously liable for the injuries to the patient.

The comments of the commissioners on the Uniform Act state:

"*This Section [4] is intended to change the common-law view under which a release given by an injured person to one of two or more tortfeasors automatically releases the others.* Since this result may be avoided anyhow by giving a covenant not to sue instead of a release, it was thought wise to obviate what must frequently be considered a technical pitfall by an injured person who releases one of two or more joint tortfeasors for a certain sum, presumably approximately the released person's share of the damage, intending to pursue his claim against the others." (Emphasis supplied) Handbook of the National Conference of Commissioners on Uniform State Laws and Proceedings, p. 246 (1939).

The comment to Section 5 reads, in part, as follows:

"The only way in which such a release can free the released tortfeasor·from his duty to contribute is to include a provision to the effect that the other tortfeasors shall be released from the injured person's pro rata share of the common liability." Handbook, *supra*, at pp. 247–248.

■ We hold that under the Uniform Act neither a covenant not to sue nor a release can operate to discharge other tort-

feasors from liability unless the agreement contains specific language to that effect. *See*: Herrera v. Uhl, 80 N.M. 140, 452 P. 2d 474 (1969); Hackett v. Hyson, 72 R.I. 132, 48 A.2d 353 (1946).

■ In the instant case the covenant not to sue executed by the Holves in consideration of $8,000 contained no language which expressly or impliedly discharged Swanson from liability. Therefore we hold that the covenant not to sue did not discharge Swanson from his derivative liability. Rather, under the terms of the covenant, any judgment which appellants might recover against Swanson should be reduced by $10,000.

■ We finally arrive at consideration of Swanson's cross-appeal from the December 22, 1971 order of the district court which denied Swanson's first motion for summary judgment. Swanson in effect argues that the first motion for summary judgment should have been granted by the district court on the basis that the only facts before the court at that time indicated the non-existence of a master-servant relationship. Without accepting the assertion that the order denying the summary judgment is appealable, we have examined the record and we find that the affidavits conflict on the material factual issue of whether, at the time of the accident, a master-servant relationship existed between Draper and Swanson. A motion for summary judgment must be denied where the affidavits conflict respecting issues of material fact. Rule 56(c), I.R.C.P. Hansen v. Howard O. Miller, Inc., 93 Idaho 314, 460 P.2d 739 (1969). Accordingly, we conclude that the trial court correctly denied Swanson's first motion for summary judgment.

The cause is reversed and remanded for proceedings consistent with this opinion. Costs to appellants.

DONALDSON, C. J., and McQUADE, McFADDEN, and BAKES, JJ., concur.