14 P.3d 1074

**Robert Brent RAUSCH,
Plaintiff–Appellant,**

v.

**POCATELLO LUMBER COMPANY, INC., dba Wall 2 Wall Carpet Company, Defendant–Respondent.**

**No. 24782.**

Court of Appeals of Idaho.

Nov. 16, 2000.

Christ T. Troupis, Meridian, for appellant.

Racine, Olson, Nye, Budge & Bailey, Pocatello, for respondent. Gary L. Cooper argued.

LANSING, Judge.

This is an action against defendant Pocatello Lumber Company, Inc., d/b/a Wall 2 Wall Carpet Co. (Wall2Wall), arising from injuries sustained by plaintiff Robert Brent Rausch when a Wall2Wall employee jokingly pulled a chair out from under Rausch. Rausch alleged two legal theories upon which he sought recovery from Wall2Wall: he alleged that Wall2Wall was liable on the basis of *respondeat superior* for the misconduct of its employee and that Wall2Wall was also liable on the basis of its negligent supervision of the employee. The district court granted summary judgment on the *respondeat superior* claim, and a jury trial was conducted on the claim of negligent supervision, with the jury returning a verdict in favor of

Wall2Wall. Rausch now appeals, urging that the court erred in granting summary judgment on the *respondeat superior* theory and also incorrectly instructed the jury on the negligent supervision claim.

## FACTS AND PROCEDURAL HISTORY

Rausch, working as an independent contractor, installed carpet for Wall2Wall. His injury occurred while he was on the Wall2Wall premises to receive work orders. Bill Sargeant, who was employed by Wall2Wall as a carpet cutter, pulled a chair out from under Rausch as Rausch started to sit down. The resulting fall caused Rausch to sustain serious injuries. Prior to this event, there had been other instances of "horseplay" by Sargeant which included grabbing Rausch around the neck, pushing him into walls and punching or grabbing him in the groin. Rausch had complained about this behavior several times to the Wall2Wall management. The assistant manager of Wall2Wall acknowledged that Sargeant had exhibited this behavior long before Rausch's injury, that the assistant manager knew it was occurring, and that he expected it would eventually result in injury.

Rausch brought an action against Wall2Wall, pleading two tort theories; he alleged that Wall2Wall was vicariously liable for the tortious act of its employee (the *respondeat superior* theory) and that Wall2Wall was also liable on the basis of its negligent supervision of Sargeant. Prior to trial, the district court granted Wall2Wall's motion for summary judgment on the *respondeat superior* claim, and the case proceeded to a jury trial on the cause of action for negligent supervision.

At the conclusion of the trial evidence, but before the jury was instructed, Rausch requested that the district court reconsider the summary judgment on the *respondeat superior* claim in light of the evidence presented at trial. The district court declined to alter its prior decision. The jury returned a verdict in favor of Wall2Wall. Rausch made a motion for a new trial, which was denied. Rausch now appeals alleging that the district court erred in granting Wall2Wall's summary judgment motion on the *respondeat superior*

claim and that the district court gave erroneous instructions and an erroneous special verdict form to the jury.

## ANALYSIS

### A. Partial Summary Judgment

The district court granted summary judgment on the *respondeat superior* claim on the basis that Rausch was unable to show that Sargeant's act of moving the chair was within the scope of his employment as a carpet cutter. On appeal, Rausch contends this decision was erroneous because there were material issues of fact relevant to whether Sargeant's actions were within the scope of his employment.

Our review of the district court's ruling on a motion for summary judgment is the same as that required of the district court when ruling on the motion. *Friel v. Boise City Hous. Auth.*, 126 Idaho 484, 485, 887 P.2d 29, 30 (1994). Summary judgment may be entered only if "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Idaho Rule of Civil Procedure 56(c). *See also Avila v. Wahlquist*, 126 Idaho 745, 747, 890 P.2d 331, 333 (1995); *Idaho Bldg. Contractors Ass'n v. City of Coeur d'Alene*, 126 Idaho 740, 742, 890 P.2d 326, 328 (1995). On review, this Court liberally construes the evidence in favor of the party opposing the motion and draws all reasonable inferences and conclusions in that party's favor. *Farm Credit Bank of Spokane v. Stevenson*, 125 Idaho 270, 869 P.2d 1365 (1994). If reasonable persons could reach different findings or draw conflicting inferences from the evidence, the motion should be denied. *Id.* at 272, 869 P.2d at 1367. However, if the evidence reveals no disputed issues of material fact, then only a question of law remains over which this Court exercises free review. *Roell v. Boise City*, 130 Idaho 199, 200–01, 938 P.2d 1237, 1238–39 (1997).

An employer may be vicariously liable for the tortious actions of an employee

through the doctrine of *respondeat superior.* Under this doctrine, "an employer or master is responsible for the torts of its employee or servant when the torts are committed within the scope of the employee's or servant's employment." *Podolan v. Idaho Legal Aid Services, Inc.,* 123 Idaho 937, 944, 854 P.2d 280, 287 (Ct.App.1993). *See also Adams v. Krueger,* 124 Idaho 74, 76, 856 P.2d 864, 866 (1993); *Holve v. Draper,* 95 Idaho 193, 195, 505 P.2d 1265, 1267 (1973); *Bettinger v. Idaho Auto Auction, Inc.,* 128 Idaho 327, 330, 912 P.2d 695, 698 (Ct.App.1996); W. PAGE KEETON ET AL., PROSSER AND KEETON ON TORTS § 70, at 502 (5th ed.1984). The Idaho Supreme Court recently addressed the standards for evaluating whether an employee's act is within the scope of his or her employment:

> [I]f the employee's purpose is purely personal, it does not matter that the employee is using the employer's tools or driving the employer's vehicle or some other activity that merely resembles his or her employment. The employee must be engaged in some type of work that is assigned to him or her in the general sense of doing something to serve the employer.
>
> . . . .
>
> [I]t is apparent that serving the "master" is required in order for the conduct to be within the scope of employment.

*Richard J. and Esther E. Wooley Trust v. DeBest Plumbing Inc.,* 133 Idaho 180, 184, 983 P.2d 834, 838 (1999). The Idaho Court of Appeals in *Podolan* defined the "scope of employment" as encompassing:

> those acts which are so closely connected with what the servant is supposed to do, and so fairly and reasonably incidental to it, that they may be regarded as methods, even though quite improper ones, of carrying out the objectives of employment.
>
> . . . [I]n general the servant's conduct is within the scope of his employment if it is of the kind which he is employed to perform, occurs substantially within the authorized limits of time and space, and is actuated, at least in part, by a purpose to serve the master.
>
> . . . An employee's purpose or intent, however misguided in its means, must be

to further the employer's business interests. If the employee acts from "purely personal motives . . . in no way connected with the employer's interest" . . . then the master is not liable.

*Podolan,* 123 Idaho at 944–45, 854 P.2d at 287–88 (quoting *Birkner v. Salt Lake County,* 771 P.2d 1053, 1056–57 (Utah 1989)) (citations omitted).

■ We find that relatively few courts have addressed whether pranks or horseplay at the workplace fall within the scope of the prankster's employment. Those jurisdictions that have considered the issue appear to be uniform in holding that if the prank or play is itself a part of the employee's duties or could be viewed as a means, even if ill-advised, of advancing the employer's interests, the act will be deemed within the scope of employment; but if the prank is a purely personal act for personal motives or whims and could in no way be said to be serving the employer, then the prank is outside the scope of employment. *See, e.g., Lane v. Safeway Stores, Inc.,* 33 Cal.App.2d 169, 91 P.2d 160 (1939) (store clerk's reciprocal act of rough play with child customer, which caused customer to fall, held not part of or connected with the transaction of employer's business); *Sands v. Ivy Liquors, Inc.,* 192 So.2d 775 (Fla.Dist.Ct. App.1966) (horseplay during which gun accidentally discharged might have been included in store manager's duties to socialize with customers to stimulate business); *Gaylor v. Jay & Gene's Chrysler–Plymouth–Dodge Inc.,* 183 Ga.App. 255, 358 S.E.2d 655 (1987) (testimony that sales manager engaged in finger wrestling with sales staff as a method of keeping a rapport with the sales staff and keeping them motivated raised factual issue as to whether sales manager was acting within the scope of his employment); *DuPree v. Babcock,* 100 Ga.App. 767, 112 S.E.2d 415 (1959) (where employee's duties included entertaining the customers, firing blanks from a dummy machine gun as part of the entertainment was within the scope of employment); *Hollinger v. Jane C. Stormont Hosp. & Training Sch. for Nurses,* 2 Kan.App.2d 302, 578 P.2d 1121 (1978) (janitor's prank of yanking a newspaper from the plaintiff's newspaper bag could not have been inciden-

tal to his employment but was for a purpose personal to him); *Creamer v. Kroger Grocery & Baking Co.*, 260 Ky. 544, 86 S.W.2d 288 (1935) (store clerk's playfully brandishing pistol, which accidentally discharged during banter with customer, not within the scope of employment); *Sullivan v. Crowley*, 307 Mass. 189, 29 N.E.2d 769 (1940) (bartender, in lighting a fire under foot of sleeping patron, was not acting in the interest of or for the benefit of the employer); *Priest v. F.W. Woolworth Five & Ten Cent Store*, 228 Mo. App. 23, 62 S.W.2d 926 (1933) (assistant manager's clowning or buffoonery "had nothing whatever to do with his employment").

The only Idaho decision touching upon this issue is *Claris v. Oregon Short Line R.R. Co.*, 56 Idaho 169, 51 P.2d 217 (1935). In *Claris*, the plaintiff was a machinist employed to grease the engine bushings for a railroad company. As a practical joke, the plaintiff's supervisor and a fellow employee loaded the plaintiff's grease gun with water. The supervisor handed the grease gun to the plaintiff and directed him to go ahead and use it. The grease gun discharged water, grease, metal shavings and borings into the plaintiff's face causing him to lose his left eye. Our Supreme Court held that the railroad company could be held liable for the supervisor's act, explaining:

> "[T]he true test in all cases by which it may be determined whether the negligent act causing the injury is chargeable to the master or is the act of a co-servant is, was the offending employee in the performance of the master's duty in reference to the particular act causing the injury, an act done in the performance of a duty that the master owed his servant? If so, his negligence is that of the master, and liability follows." Applying the test so adopted by this court, it is clear that in supplying the respondent with the grease gun in question, and in informing respondent that the grease gun was ready and thereafter directing respondent to go ahead and use it, [the supervisor] was performing a duty which his master, the appellant, owed the respondent, and that [the supervisor] was guilty of an act of omission, imputable to appellant, in the performance of that duty

by failing to supply the respondent with a safe tool with which to grease the bushing. *Id.* at 174, 51 P.2d at 218 (quoting *Larsen v. Le Doux*, 11 Idaho 49, 81 P. 600 (1905)).

Applying the standards enunciated in the foregoing cases, we conclude, as did the district court, that Wall2Wall cannot be held answerable, on a *respondeat superior* theory, for Sargeant's act of pulling the chair out from under Rausch. Wall2Wall supported its summary judgment motion with the affidavit of the Wall2Wall manager, who averred that Sargeant's job duties did not include horsing around or joking with carpet installers or others. The affidavit stated that such conduct does not promote any objectives or further any business interest of Wall2Wall. Wall2Wall also submitted an affidavit of Sargeant in which he acknowledged that this prank and other instances of horseplay with Rausch were done from personal motives and did not further any purpose or objective of Wall2Wall. Sargeant also admitted that he was aware that Wall2Wall had a policy of providing a safe work environment and that he did not adhere to this policy in the incident that gave rise to Rausch's claim. Rausch submitted no evidence that controverts these affidavits and has hypothesized no way in which Sargeant's horseplay could be viewed as part of the performance of his duties as a carpet cutter or could have been actuated, even in part, by a purpose of serving Wall2Wall or advancing its business interests. This circumstance is distinguishable from that addressed by our Supreme Court in *Claris* because *Claris* dealt with the duties owed by a master to a servant, an area of the common law that has been superseded by modern worker's compensation statutes, and also because Sargeant's act in moving Rausch's chair was not in the performance of any of Sargeant's own job duties or of any duty that Wall2Wall owed to Rausch.

Rausch argues that because he requested at the end of the trial that the court reconsider the partial summary judgment in light of the trial evidence, we should consider the trial evidence in our determination whether a material factual issue was presented that would preclude summary judgment. Wall2Wall counters that the trial evidence

ought not be considered because Rausch's verbal request for reconsideration during the jury instruction conference was inadequate and untimely as a motion for reconsideration. We need not resolve the issue as to the procedural propriety of Rausch's oral request for reconsideration of the summary judgment, for even when the trial evidence is encompassed, we find no evidentiary basis for a finding that Sargeant was acting within the scope of his employment when he pulled the chair away from Rausch.

Rausch also argues that evidence he presented in opposition to the motion, which showed that Wall2Wall management was aware of Sargeant's horseplay and did not take adequate steps to stop it, precluded summary judgment. However, this evidence that the horseplay may have been tolerated by Wall2Wall is not indicative that the behavior was connected to Sargeant's job duties or was aimed in any way toward advancement of Wall2Wall's business interests. Although the evidence of Wall2Wall's passivity in the face of Sargeant's misbehavior is relevant to Rausch's cause of action for negligent supervision, which we discuss below, it is of little or no relevance to the claim that is predicated on a theory of *respondeat superior*.

### B.  Jury Instruction

Rausch also asserts that he is entitled to a new trial on the negligent supervision claim because the district court incorrectly instructed the jury.

■■■■■■ Rausch's negligent supervision claim that was tried to the jury differed from the *respondeat superior* claim that was dismissed by the district court in two significant ways. First, a negligent supervision claim is not based upon imputed or vicarious liability but upon the employer's own negligence in failing to exercise due care to protect third parties from the foreseeable tortious acts of an employee. *See generally, Doe v. Garcia,* 131 Idaho 578, 961 P.2d 1181 (1998); *Doe v. Durtschi,* 110 Idaho 466, 471–73, 716 P.2d 1238, 1243–44 (1986); *Podolan, supra.* Second, negligent supervision liability encompasses conduct of the employee that is *outside* the scope of employment, at least if the employee is on the employer's premises or using an instrument or property of the employer. *See Trahan-Laroche v. Lockheed Sanders,* 139 N.H. 483, 657 A.2d 417 (1995); *Kerans v. Porter Paint Co.,* 61 Ohio St.3d 486, 575 N.E.2d 428 (1991); *Brockington v. Pee Dee Mental Health Ctr.,* 315 S.C. 214, 433 S.E.2d 16 (1993); *Retherford v. AT & T Communications,* 844 P.2d 949 (Utah 1992); RESTATEMENT (SECOND) OF TORTS § 317.[1] An employer's duty of care requires that an employer who knows of an employee's dangerous propensities control the employee so he or she will not injure third parties. *Podolan,* 123 Idaho at 946, 854 P.2d at 289. Thus, in the present case, Rausch was entitled to have the jury decide whether Wall2Wall breached a duty to Rausch because Wall2Wall knew of Sargeant's propensity to engage in rough and dangerous horseplay and failed to exercise due care in supervising Sargeant so as to prevent him from injuring Rausch.

■■■■ Rausch argues that although the jury was otherwise adequately instructed upon the elements of the cause of action for negligent supervision, those instructions were essentially contradicted by Instruction 12, which stated:

You are instructed that the Court has already decided as a matter of law that Bill Sargeant was acting outside the scope of his employment when he pulled a chair out from under Robert Brent Rausch, and therefore, any negligence attributable to the action of Bill Sargeant in this regard is not imputed to or the responsibility of

---

1.  The RESTATEMENT (SECOND) OF TORTS § 317 defines this cause of action as follows:

A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if
    (a) the servant

(i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or
(ii) is using a chattel of the master, and
    (b) the master
(i) knows or has reason to know that he has the ability to control his servant, and
(ii) knows or should know of the necessity and opportunity for exercising such control.

Wall2Wall Carpets. You are therefore not to assess any percentage of negligence to Wall2Wall based on the action or conduct of Bill Sargeant.

Rausch contends that this instruction incorrectly told the jury that Wall2Wall could not be found liable for the injury caused by Sargeant.

When reviewing jury instructions on appeal, our task is to "ascertain whether the instructions, when considered as a whole, fairly and adequately present the issues and state the applicable law." *Brooks v. Gigray Ranches, Inc.*, 128 Idaho 72, 76, 910 P.2d 744, 748 (1996) (quoting *Manning v. Twin Falls Clinic & Hosp.*, 122 Idaho 47, 50, 830 P.2d 1185, 1188 (1992)). "[W]here jury instructions are given which are contradictory on material matters, 'the conflict between them and the resultant ambiguity and uncertainty constitutes prejudicial error and requires reversal.'" *Hook v. B.C. Inv., Inc.*, 125 Idaho 453, 455, 872 P.2d 716, 718 (1994) (quoting *Yacht Club Sales & Serv., Inc. v. First Nat'l Bank*, 101 Idaho 852, 863, 623 P.2d 464, 475 (1980)).

It appears that the intent of the district court in giving Instruction 12 was to ensure that the jury would not impose liability upon Wall2Wall on the theory of *respondeat superior*, for which summary judgment had been granted to Wall2Wall. We conclude, however, that because the only remaining liability issue was that of negligent supervision, Instruction 12 was an erroneous statement of the law and may have materially misled the jury. While that part of the instruction stating that negligence attributable to Bill Sargeant is not "imputed" to Wall2Wall is a correct statement of legal doctrine, the additional language that Sargeant's negligence is not "the responsibility of" Wall2Wall is an overstatement; if the jury found the elements of negligent supervision to have been proved, then Wall2Wall would be legally "responsible" for the negligent or intentional tort of Bill Sargeant in the sense that Wall2Wall would be liable for the injury caused by Sargeant. This instruction may have been understood by the jury as, in practical effect, an instruction for a directed verdict in favor of Wall2Wall. The final sentence of the instruction, telling the jurors that they were "not to assess any percentage of negligence to Wall2Wall based on the action or conduct of Bill Sargeant" was also erroneous, for an employer's negligent supervision liability always is based upon the employee's harmful act, coupled with the employer's own negligence in failing to prevent the act. Because Instruction 12 conflicts with the jury instructions on negligent supervision liability and may have misled the jury, this error is prejudicial and requires that the verdict be set aside.

For guidance on remand, we observe that even with the incorrect statements redacted, in our view it would be both unnecessary and unwise to give the instruction, for "[o]nly instructions which are pertinent to the pleadings and the evidence should be given." *Sherwood v. Carter*, 119 Idaho 246, 260, 805 P.2d 452, 466 (1991). Instruction 12 contains information that is unnecessary for the jury's deliberations and could confuse and mislead the jury. For example, lay jurors may not understand the legal meaning of the statement that Sargeant's negligence "is not imputed to" Wall2Wall. More importantly, such information is not necessary for the jury's information when the jury is considering only a claim of negligent supervision. If the jury is properly instructed upon the elements that must be proved to establish liability for an employer's own negligence in a negligent supervision action, there ordinarily should be no need for an instruction that the jury may not find liability on other theories having different elements.

## C. Special Verdict Form

Because the issue may arise again at a retrial on remand, we also address Rausch's contention that the special verdict form given to the jury was improper. The verdict form directed the jury to determine the proportionate shares of negligence attributed to Wall2Wall, to Rausch, and to Sargeant, who was not a party to the litigation. Rausch argues that the verdict form was incorrect in allowing apportionment of fault to Sargeant because if Wall2Wall is found liable for negligent supervision, it is liable for not only the damages apportionable to Wall2Wall's share

of fault but also for the damages apportionable to the fault of its employee, Sargeant.

This issue is governed by Idaho Code § 6–803(3), by which the Idaho legislature largely abrogated the common law doctrine of joint and several liability for joint tortfeasors. That statute provides that in most circumstances: "The negligence or comparative responsibility of each [tortfeasor] party is to be compared individually to the negligence or comparative responsibility of the person recovering. Judgment against each such party shall be entered in an amount equal to each party's proportionate share of the total damages awarded." Under this subsection of I.C. § 6–803, in most cases a defendant who has been found liable to the plaintiff for a tort bears liability only for that defendant's proportionate share of the total damages, and the plaintiff may not recover from one defendant for the share of damages allocable to the fault of another defendant or nonparty tortfeasor. *See, e.g., Hughes v. State*, 129 Idaho 558, 563, 929 P.2d 120, 125 (1996); *Le'Gall v. Lewis County*, 129 Idaho 182, 184–85, 923 P.2d 427, 429–30 (1996).

A different subsection of the same statute, I.C. § 6–803(5), preserves the common law doctrine of joint and several liability with respect to an employer's *respondeat superior* liability. That subsection provides: "A party shall be jointly and severally liable for the fault of another person or entity or for payment of the proportionate share of another party ... when a person was acting as an agent or servant of another party." Because this subsection preserves joint liability only when one tortfeasor "was acting as an agent or servant of another party," it has no application in cases, like the one before us, where the employee's tortious act was outside the scope of the employment. Thus, the legislative abrogation of joint liability expressed in I.C. § 6–803(3) allows apportionment of fault between Sargeant and Wall2Wall and limits Wall2Wall's liability to its proportionate share of damages.

Rausch contends, however, that the § 6–803(3) provision for apportionment is inapplicable because Sargeant's act was an intentional tort, a battery, rather than an act of negligence. According to Rausch, the comparative responsibility provisions of § 6–803 do not apply to intentional torts and do not allow an allocation of fault between a negligent tortfeasor and an intentional tortfeasor.

In our view, this argument is unsupported by the language of the statute. Subsection (3) requires the comparison of not only parties' negligence but of their "negligence or comparative responsibility," thus allowing for apportionment of fault other than that arising from negligence. In addition, subsection (4) defines "joint tortfeasor" as "one (1) of two (2) or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them." This definition is not limited to persons who are liable in negligence; it refers to anyone who is liable "in tort." This definition of joint tortfeasor is in all material respects the same as that considered by the Idaho Supreme Court in *Holve v. Draper*, 95 Idaho 193, 505 P.2d 1265 (1973). The Supreme Court noted that this definition of a joint tortfeasor "is exceedingly broad and goes beyond the traditional meaning of the term." *Id.* at 195, 505 P.2d at 1267. The Court went on to quote with approval from HARPER AND JAMES, I THE LAW OF TORTS § 10.2, p. 722 (1956), as follows:

> The act does not restrict its operation to joint tort-feasors who are merely negligent or who in any other way inadvertently harm others. The act clearly is open to an interpretation that would include those responsible jointly or severally for an intentional tort.

*Holve*, 95 Idaho at 195, 505 P.2d at 1267. While this comment from *Holve* might be characterized as dicta, it is, in our view, consistent with the statutory language defining joint tortfeasor. Therefore, even if Sargeant's conduct can be properly characterized as intentional rather than negligent, his name may be included on the special verdict form for purposes of apportionment of responsibility.

Finally, Rausch argues that Wall2Wall should not get the benefit of apportionment of part of the damages to Sargeant because the foreseeability of harm caused by Sar-

geant's misbehavior is the very factor that makes Wall2Wall's conduct negligent. He relies on *Sharp v. W.H. Moore, Inc.*, 118 Idaho 297, 796 P.2d 506 (1990), for the proposition that the happening of the very event the likelihood of which makes an actor's conduct negligent, and so subjects the actor to liability, cannot relieve him from that liability. The *Sharp* decision is inapposite, however, because it addresses a defendant's attempt to completely avoid liability under the common law doctrine of intervening or superseding cause; it does not concern the apportionment of liability under I.C. § 6–803. With respect to questions of apportionment, the courts must defer to the legislative expression in I.C. § 6–803. Because that statute authorizes apportionment of fault in this circumstance, it is appropriate to include Sargeant on the special verdict form on retrial of this matter.

## CONCLUSION

The district court's order granting Wall2Wall's motion for summary judgment as to Rausch's claim of *respondeat superior* is affirmed. However, the judgment in favor of Wall2Wall on Rausch's claim of negligent supervision is vacated, and this case is remanded to the district court for further proceedings consistent with this opinion. Because each party prevailed in part, neither is awarded costs on appeal.

Chief Judge PERRY and Judge Pro Tem MOSS, concur.