NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURG, a Pennsylvania corporation, Plaintiff–Appellant,

v.

AEROHAWK AVIATION, INC.; Mark Ulschmid; James D. Jorgensen, an individual; Jasen Jorgensen; Jody Nelson; Mary White, as Personal Representative of the Estate of James D. Jorgensen; Scott D. Adams, an individual; R. Chester Adams; Phyllis M. Adams; Lisa Loughmiller, as Personal Representative of the Estate of Scott D. Adams; Recreational Sports and Imports, Inc., an Idaho corporation; Corporate Aircraft, Inc.; Aerospace Control Products, Inc., an Iowa corporation; McCauley Propeller Systems, a division of The Cessna Aircraft Company, a Kansas corporation; Cessna Aircraft Co., a Kansas corporation; Pratt & Whitney Canada, a Canadian corporation and a division of United Technologies Corporation, a Delaware corporation; Pratt & Whitney, a division of United Technologies Corporation, a Delaware corporation; Woodward Governor Company, a Delaware corporation; International Governor Services, Inc., a Colorado corporation; Proflight, Inc., a California corporation; Caleb Taylor, an individual, Defendants,

and

NSI, Inc., an Idaho corporation, fka NSI Network Solutions, Inc., Defendant–Appellee.

No. 06–35193.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 17, 2007.

Filed Nov. 8, 2007.

Stephen R. Thomas, Esq., Joel A. Flake, Esq., Moffatt Thomas Barrett Rock & Fields, Chtd., Boise, ID, for Plaintiff–Appellant.

Michael Christian, Esq., Marcus, Merrick & Montgomery, William H. Thomas, Esq., Huntley Park, Attorneys at Law, Stephen T. Woychick, Esq., Craig L. Meadows, Esq., Hawley Troxell Ennis & Hawley, Boise, ID, G. Val Tollefson, Esq., Danielson Harrigan Leyh & Tollefson LLP, Seattle, WA, G. Lance Nalder, Esq., Nalder Law Office PC, Dale W. Storer, Esq., Holden Kidwell Hahn & Crapo, PLLC, Idaho Falls, ID, David H. Maguire, Esq., Maguire, Ward, Maguire and Eldredge, Brendon C. Taylor, Esq., Merrill and Merrill, Pocatello, ID, Alex Herran, Esq., Hoff Collins & Cook, Chicago, IL, Kamie F. Brown, Snell & Wilmer, Salt Lake City, UT, for Defendants.

Michael W. Moore, Esq., Michael J. Elia, Esq., Moore & Baskin, LLP, Boise, ID, Michael D. Gaffney, Esq., Beard St. Clair Gaffney, Idaho Falls, ID, for Defendant–Appellee.

Before: D.W. NELSON, BEAM\*, and RYMER, Circuit Judges.

## MEMORANDUM\*\*

National Union Fire Insurance brought this diversity subrogation action against several parties involved, either directly or indirectly, in the crash of a Cessna 425 airplane owned by National's insured, Fred Hibberd. National settled with all parties except NSI, Inc., which was the employer of Scott Adams, one of the two pilots aboard the Cessna when the accident occurred on November 10, 2000. National asserts that NSI is vicariously liable for Adams' alleged negligence during the ill-fated flight.

### I.

Aerohawk Aviation repaired Hibberd's Cessna in early November 2000. Aerohawk's mechanic agreed to let pilot Jim Jorgensen conduct a maintenance-test flight of Hibberd's Cessna 425. When the mechanic approached Jorgensen on November 10 to tell him that the plane was ready for the test, Jorgensen responded by inviting Adams, who was standing nearby, to go along. Jorgensen got into the left seat of the plane with Adams on the right. The vehicle could be piloted from either seat. Tragically, the craft crashed during the test flight, killing both Jorgensen and Adams.

NSI's company plane was a Cessna 414, and Adams, its usual pilot, was qualified to fly the aircraft. However, NSI had either recently purchased or was about to purchase a 1981 Cessna 425, and Adams was not yet qualified to fly that model. NSI had slated Adams to attend flight-safety classes for the Cessna 425 on November 27, 2000, and Adams was listed on insurance documents as a potential pilot for the new aircraft. Adams was required by NSI to "stay legal to fly," meaning that he had to maintain flying certificates as required either by law or insurance companies. However, NSI's president, Paul Wareing, testified that pursuant to an unwritten company policy, if Adams needed training, Wareing had to give prior approval in order to control company expenses. Wareing did not expressly authorize Adams to accompany Jorgensen on the test flight.

---

\* The Honorable C. Arlen Beam, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

\*\* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

According to National's expert witness, Erik Rigler, even though Adams was scheduled for formal flight instruction on the Cessna 425, Adams would also need to have twenty-five "dual instruction" flight hours, independent of flight school, in order to be covered by NSI's flight insurance. Rigler stated that Adams would also need to log experience at the controls of a Cessna 425 during three takeoffs and three landings before becoming eligible to be the "pilot in command."

NSI has moved for summary judgment three times in this case. The district court denied the first motion without prejudice, in part to allow National to conduct additional discovery. Next, NSI joined a summary judgment motion filed by Adams' estate, arguing that there was no evidence Adams was a proximate cause of the crash. The district court denied the motion, finding that there was a disputed issue of material fact as to whether Adams was in control of the aircraft in question.[1] The district court's ruling is not argued on appeal, and we proceed on the premise that there is a factual dispute concerning whether Adams was at the controls during the flight.

NSI filed the current motion for summary judgment in October 2005, arguing that even if Adams was at the controls, he was not acting within the course and scope of his employment with NSI while flying the plane. The district court granted this motion, finding that to the extent Adams accompanied Jorgensen on the test flight for the purpose of gaining additional flight time on the Cessna 425, his doing so was prohibited by Wareing and NSI as unau-thorized training. Accordingly, the district court held that performing prohibited acts could not be within the course and scope of Adams' employment. National appeals.

## II.

We review the district court's grant of summary judgment *de novo*, viewing the evidence in the light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 872 (9th Cir.2007). We review a district court's application of state substantive law in diversity cases *de novo*. *Id.*

An employer is responsible for the torts of its employee committed within the scope of the employee's employment. *Finholt v. Cresto*, 143 Idaho 894, 155 P.3d 695, 698 (2007). In Idaho, the scope of one's employment covers:

> those acts which are so closely connected with what the servant is supposed to do, and so fairly and reasonably incidental to it, that they may be regarded as methods, even though quite improper ones, of carrying out the objectives of employment.... [I]n general the servant's conduct is within the scope of his employment if it is of the kind which he is employed to perform, occurs substantially within the authorized limits of time and space, and is actuated, at least in part, by a purpose to serve the master.

*Rausch v. Pocatello Lumber Co.*, 135 Idaho 80, 14 P.3d 1074, 1078 (Idaho Ct.App. 2000) (alterations in original) (quotations

---

1. Rigler, relying upon the testimony of the Air Traffic Manager at the Idaho Falls Control Tower, noted that Jorgensen handled the radio duties during the flight. According to Rigler, this made it more likely that Adams was at the controls of the plane, because it was common practice for co-pilots to divide duties in this manner, especially during a maintenance-test procedure. In Rigler's opinion, the test flight crashed because the plane had not reached a sufficient altitude, 10,000 feet, when the maintenance test was conducted.

omitted). An employer may be liable if the employee's intent, even if misguided, is to further the employer's business interests. *Id.* But if the employee acts with personal motives that are in no way connected to the employer's interests, there is no respondeat superior liability. *Podolan v. Idaho Legal Aid Servs., Inc.,* 123 Idaho 937, 854 P.2d 280, 288 (Idaho Ct.App.1993). The issue of whether an employee acted within the scope of employment is a factual question to be decided by the trier of fact, but conduct that is clearly outside the scope of employment may be decided by the court as a matter of law. *Id.* NSI cannot establish that Adams' conduct was clearly outside the scope of his employment in this case.

There is uncontested expert testimony that Adams not only accompanied Jorgensen on the flight, but was actually piloting the plane. The same expert has explained that Adams needed flight hours independent of the upcoming Cessna 425 flight-training course, and that he needed to be at the controls during three takeoffs and landings before becoming the "pilot in command" of a Cessna 425. If the pilot on NSI's payroll was qualified to fly its new plane, NSI would not have to pay another pilot on a contract basis. And this training was impromptu and *free,* which arguably negates the cost-containing rationale behind NSI's unwritten rule about preauthorized training. All of the above furthered NSI's business interests. *Rausch,* 14 P.3d at 1078.

The district court held that because Adams' conduct was prohibited by company policy, it could not be within the course and scope of his employment. We cannot agree that Idaho courts would so strictly construe the prohibited conduct exclusion from the course-and-scope-of-employment test. *See Manion v. Waybright,* 59 Idaho 643, 86 P.2d 181, 186–87 (1938) (holding that it was a jury question whether salesman was acting within the scope of employment by giving a passenger a ride on the way to the salesman's next job assignment, even though employer had prohibited salesmen from carrying passengers); Idaho Civil Jury Instructions 2d 6.43.1 (conduct is within the scope of authority if it occurs while the agent is engaged in duties that he was expected to perform, even if the act was not expressly authorized, if the act benefits the principal and is "incidental to, customarily connected with, or reasonably necessary" for the performance of the agent's duties).

**REVERSED.**