81 P.3d 1236

**Mari Ann DYET, Plaintiff–Respondent– Cross Appellant,**

v.

**William Shane McKINLEY, Defendant– Appellant–Cross Respondent.**

No. 28628.

Supreme Court of Idaho, Pocatello, September 2003 Term.

Dec. 4, 2003.

Cooper & Larsen, Pocatello, for appellant. Garry L. Cooper argued.

McBride & Roberts, Idaho Falls, for respondent. Michael R. McBride argued.

SCHROEDER, Justice.

This is a personal injury case arising out of an automobile collision. Mari Ann Dyet (Dyet) was a passenger in her own vehicle which was being driven by her daughter, Charlotte Hansen (Hansen). Shane McKinley (McKinley) was driving the other car involved in the collision. A jury awarded Dyet damages and both parties appeal. The primary issues on appeal are the admissibility of evidence of reductions in the charges for medical services due to Medicare "write downs," and the question of whether the award should be reduced by the amount Dyet received for underinsured motorist benefits from her own insurance company.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

On October 27, 2000, Hansen and Dyet were traveling in the same car on a highway near Idaho Falls. McKinley was traveling the opposite direction on the same highway and attempted to make a left turn in front of Hansen and Dyet at an intersection. The cars collided and Hansen and Dyet sustained serious injuries. Dyet's right hip and left femur were fractured. Her injuries required multiple surgeries, including the insertion of a new right artificial hip, replacing an artificial hip that had been inserted in 1987. In spite of successful surgeries, she has some remaining impairments as a result of the injuries. The charges from the medical providers for Dyet's care totaled $89,367.71. However, because Dyet was a Medicare patient, the bill was mandatorily reduced by $67,655.22 to $21,712.49. Subsequently, Dyet

also received $75,000 in Underinsured Motorist Benefits from her own insurance company.

Dyet sued McKinley for damages arising from his alleged negligent driving. She filed a motion *in limine* requesting that all evidence be excluded at trial relevant to whether she was insured and relevant to whether she "received monies from *any* source such as Medicare, Medicaid, underinsured insurance, or private health insurance." The district court granted the motion *in limine,* allowing Dyet to introduce the charges for the medical services but not allowing any evidence during trial as to the amount she actually paid for the services or the write off required by Medicare. McKinley made an offer of proof during trial showing that Dyet's medical bills were reduced by $67,655.22 due to Medicare regulations and federal law.

The jury returned a special verdict finding McKinley and Hansen, a non-party, both negligent and apportioning 88% of the fault to McKinley and 12% to Hansen. The jury awarded Dyet $400,000 in damages, which amount included $89,367.71 for medical expenses. The district court reduced the verdict by $48,000 for comparative negligence on the part of Hansen and by another $67,665.22 for the reduction in charges required by Medicare regulations and federal law, leaving a net judgment of $284,334.78. The district court refused to reduce the verdict by the $75,000 paid for underinsured motorist coverage. Both parties appeal. Dyet maintains the verdict should not have been reduced. McKinley maintains that he should have been allowed to offer evidence at trial of the actual amount paid for medical expenses and that the verdict should have been reduced by the $75,000 paid as underinsured motorists benefits.

## II.

### THE DISTRICT COURT DID NOT ERR IN PROHIBITING McKINLEY FROM OFFERING PROOF OF THE AMOUNTS ACTUALLY PAID TO DYET'S MEDICAL PROVIDERS

#### A. Standard of Review

 The interpretation of a statute is an issue of law over which this Court exercises

free review. *Idaho Fair Share v. Idaho Public Utilities Comm'n,* 113 Idaho 959, 961–62, 751 P.2d 107, 109–10 (1988), *overruled on other grounds by J.R. Simplot Co. v. Idaho State Tax Comm'n,* 120 Idaho 849, 820 P.2d 1206 (1991). When interpreting a statute, the primary function of the Court is to determine and give effect to the legislative intent. *George W. Watkins Family v. Messenger,* 118 Idaho 537, 539–40, 797 P.2d 1385, 1387–88 (1990). Such intent should be derived from a reading of the whole act at issue. *Id.* at 539, 797 P.2d at 1387–88. If the statutory language is unambiguous, "the clearly expressed intent of the legislative body must be given effect, and there is no occasion for a court to consider rules of statutory construction." *Payette River Property Owners Ass'n v. Board of Comm'rs of Valley County,* 132 Idaho 551, 557, 976 P.2d 477, 483 (1999). The plain meaning of a statute will prevail unless clearly expressed legislative intent is contrary or plain meaning leads to absurd results. *George W. Watkins Family,* 118 Idaho at 540, 797 P.2d at 1388.

 When a statute is ambiguous, the determination of the meaning of the statute and its application is also a matter of law over which this Court exercises free review. *Kelso & Irwin, P.A. v. State Insur. Fund,* 134 Idaho 130, 134, 997 P.2d 591, 595 (2000); *J.R. Simplot Co. v. Western Heritage Ins. Co.,* 132 Idaho 582, 584, 977 P.2d 196, 198 (1999). If it is necessary for this Court to interpret a statute, the Court will attempt to ascertain legislative intent, and in construing a statute, may examine the language used, the reasonableness of the proposed interpretations, and the policy behind the statute. *Kelso & Irwin, P.A.* at 134, 997 P.2d at 595.

#### B. The district court correctly refused to allow McKinley to present evidence to the jury regarding the amounts actually paid to Dyet's medical providers.

Idaho Code § 6–1606, entitled "Prohibiting double recoveries from collateral sources" states:

[I]n any action for personal injury or property damage, a judgment may be entered for the claimant only for damages which exceed amounts received by the claimant from collateral sources as compensation for the personal injury or property damage, whether from private, group or governmental sources, and whether contributory or noncontributory. For purposes of this section, collateral sources shall not include benefits paid under federal programs which by law must seek subrogation ... Evidence of payment by collateral sources is admissible to the court after the finder of fact has rendered an award. Such award shall be reduced by the court to the extent the award includes compensation for damages, which have been compensated independently from collateral sources.

■ The central issue in this case is whether or not Medicare write-offs are a collateral source under I.C. § 6–1606 or, if not, if the write-offs should be treated the same as a collateral source.

I.C. § 6–1606 is clearly a statute that was designed to prevent double recovery. In the Statement of Purpose accompanying House Bill 745, currently I.C. § 6–1606, the legislature stated that:

> This bill would modify the collateral source rule of evidence in certain circumstances in which the court determines that a double payment will exist [sic] the court is given the authority to modify an award of damages so that the damages would be paid once but not twice.

Both parties argue that a Medicare write-off is not a collateral source under I.C. § 6–1606. However, this is the extent to which they agree. Dyet argues that the write-off amount falls into the non-collateral "federal benefits under which by law must seek subrogation" category, but that it should be inadmissible under I.R.E. 403, analogous to the existence of liability insurance. McKinley argues that the statute cannot be construed to include the write-off as a collateral source, and as such, should be admissible at trial. McKinley maintains that misstating the total amount paid for the medical expenses artificially inflates the damages awarded by the jury.

The district court followed a rule adopted by many states with statutes similar to that of Idaho. Citing *Kastick v. U–Haul*, 740 N.Y.S.2d 167, 292 A.D.2d 797 (2002) and *Loncar v. Gray*, 28 P.3d 928 (Alaska 2001), the district court stated that "these jurisdictions hold that while Medicare write-offs are technically not payments from a collateral source, plaintiffs may not recover the amount of the write-off from a tortfeasor because it was not an item of damages for which the plaintiff ever became obligated."

Neither the language of I.C. § 6–1606 nor its Statement of Purpose specifically deal with write-offs, but the district court's reasoning is sound. By treating a Medicare write-off as a collateral source, the danger of prejudice contemplated in I.R.E. 403 is avoided, and the jury will not be influenced by the existence of Medicare. At the same time, the policy of I.C. § 6–1606 contained in both the statute and the legislative history to prevent a double payment for the damages is preserved. Although the write-off is not technically a collateral source, it is the type of windfall that I.C. § 6–1606 was designed to prevent. As reasoned by the New York court in *Kastick*, "Although the write-off technically is not a payment from a collateral source within the meaning of [the collateral source statute], it is not an item of damages for which plaintiff may recover because plaintiff has incurred no liability therefore." *Id.*, 740 N.Y.S.2d at 169, 292 A.D.2d at 798.

### III.

### THE DISTRICT COURT DID NOT ERR IN DENYING McKINLEY'S MOTION FOR NEW TRIAL

#### A. Standard of Review

■ When reviewing a trial court's ruling on a motion for new trial, this Court applies an abuse of discretion standard. *State v. Davis*, 127 Idaho 62, 896 P.2d 970 (1995). A trial court has wide discretion to grant or refuse to grant a new trial, and on appeal this Court will not disturb that exercise of discretion absent a showing of manifest abuse. *State v. Olin*, 103 Idaho 391, 648 P.2d 203 (1982). In *State v. Hedger*, 115

Idaho 598, 768 P.2d 1331 (1989), this Court set out the test for evaluating whether a trial court has abused its discretion:

> (1) whether the lower court rightly perceived the issue as one of discretion; (2) whether the court acted within the outer boundaries of such discretion and consistently with any legal standards applicable to specific choices; and (3) whether the court reached its decision by an exercise of reason.

*Id.* at 600, 768 P.2d at 1333 (quoting *Associates Northwest, Inc. v. Beets,* 112 Idaho 603, 605, 733 P.2d 824, 826 (Ct.App.1987)).

I.R.C.P. 59(a) states that a new trial may be granted to all or any of the parties and on all or part of the issues in an action for any of the following reasons:

. . .

(5) Excessive damages or inadequate damages, appearing to have been given under the influence of passion or prejudice.

(6) Insufficiency of the evidence to justify the verdict or other decision, or that it is against the law.

(7) Error in law, occurring at the trial.

**B. The district court acted within its discretion in denying McKinley a new trial.**

 McKinley moved for a new trial, contending that the inadmissibility of the Medicare write-offs unfairly prejudiced him, speculating that the medical expenses presented to the jury undoubtedly inflated the general damages award given by the jury. The district court disagreed on the following grounds:

> (1) Even if the decision to exclude the evidence of the write offs were in error, the use of a special verdict which separated the medical damages from other damage elements eliminated the potential harm to McKinley.
>
> (2) There is nothing in the verdict that indicates that the jury used some multiple of the medical expenses to reach a general damage figure (although attorneys regularly do such to evaluate a case). Rather, it appears to the [district court] that the jury reached a decision about a fair total

award of damages, then subtracted out the special damages to reach the general damage award. Such a process actually favors McKinley as a result of the Court's remittitur herein.

The district court was aware that it was exercising discretion and laid out its legal analysis, its rationale, and the supporting evidence presented at trial very carefully. The district court acted within its discretion when it denied McKinley a new trial.

## IV.

**THE DISTRICT COURT DID NOT ERR WHEN IT DENIED McKINLEY'S POST–TRIAL MOTION TO REDUCE THE VERDICT BY THE $75,000 IN UNDERINSURED MOTORIST BENEFITS DYET RECEIVED FROM HER OWN INSURER**

McKinley maintains that the district court erred when it denied his motion to reduce the verdict by the $75,000 that was paid Dyet in underinsured benefits by her own insurance company. Idaho Code § 6–1606 provides that "collateral sources shall not include . . . benefits paid which are recoverable under subrogation rights under Idaho law or by contract." McKinley says that the district court wrongly assumed that it does not matter if the benefit provider actually exercises its right to recover benefits, and wrongly assumed that it only matters that a subrogation right exists. McKinley asserts that Dyet has refused to reveal whether her insurer has exercised or waived insurance rights, and therefore the court cannot decide whether such benefits are collateral sources under the terms of the statute, maintaining that waived subrogation rights are inherently not "recoverable," and therefore should be considered collateral sources.

### A. Standard of Review

The interpretation of a statute is an issue of law over which this Court exercises free review. *Idaho Fair Share v. Idaho Public Utilities Comm'n,* 113 Idaho 959, 961–62, 751 P.2d 107, 109–10 (1988), *overruled on other grounds by J.R. Simplot Co. v. Idaho State*

*Tax Comm'n,* 120 Idaho 849, 820 P.2d 1206 (1991).

### B. The district court correctly deemed the $75,000 received from Hartford Insurance as a non-collateral source.

■ I.C. § 6–1606 states "collateral sources shall not include ... benefits paid which are *recoverable* under subrogation rights created under Idaho law or by contract." I.C. § 6–1606 (emphasis added). The definition of "recoverable" is commonly accepted as capable of being recovered. FUNK & WAGNALLS NEW STANDARD DICTIONARY OF THE ENGLISH LANGUAGE 2066 (9th ed.1935). The relevant legislative history indicates that the policy behind I.C. § 6–1606 is to prevent the double payment of damages, not to prevent payment only in the absolute case that a third party exercises its contractual rights to recovery.

In an effort to prove the recoverability of the amounts received from Hartford Insurance, Dyet placed into evidence the relevant portions of the insurance contract relating to the subrogation rights of amounts paid:

Our Right to Recover Payment:

A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we will be subrogated to that right. That person shall do:

1. Whatever is necessary to enable us to exercise our rights; and

2. Nothing after loss to prejudice them.

B. If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:

1. Hold in trust for us the proceeds of the recovery; and

2. Reimburse us to the extent of our payment.

The rule sought by McKinley is that Dyet's recovery be reduced by the $75,000 unless she can prove that Hartford has recovered or intends to recover the amount paid. This could result in the non-recovery of those damages by Dyet if the damages are reduced and Hartford subsequently seeks recovery. Whether or not Hartford seeks recovery from Dyet as it is entitled under the contract is a contractual matter between Dyet and Hartford. If damages are reduced and Hartford seeks recovery, Dyet would either have to reopen proceedings against McKinley or suffer incomplete recovery of damages. This would either violate Idaho's policy of finalizing litigation or result in injustice. For purposes of I.C. § 6–1606 the operative fact is that the amount is recoverable.

## V.

### THE DISTRICT COURT DID NOT ENTER JUDGMENT CALLING FOR PRE–JUDGMENT INTEREST COMMENCING MAY 18, 2001 ON THE ENTIRE JUDGMENT

■ McKinley argues that the district court improperly awarded pre-judgment interest on the entire judgment from May 18, 2001, instead of just interest on the offer of settlement under I.C. § 12–301(c).

Dyet agrees with McKinley that pre-judgment interest should only be awarded on the $85,000 settlement and not the entire judgment. However, Dyet believes that the court awarded the proper interest. In its final judgment, the district court made reference to its prior order awarding pre-judgment interest only on the $85,000.

I.C. § 12–301 authorizes the prevailing party to recover over and above the judgment annual interest on the amount contained in the settlement offer, computed from the date the offer of settlement was served:

If the court finds that such claimant has recovered an amount equal to or greater than his offer of settlement, the court shall add to the judgment, annual interest on the amount contained in such offer, computed from the date that the offer of settlement was served and shall enter judgment accordingly.

In the matter of interest on offers of settlement the Idaho legislature enacted I.C. § 12–301, which allows the court to add to the judgment annual interest on the amount

of an offer of settlement if a claimant recovers an amount equal to or greater than his or her offer settlement.

In the current case, the district court ruled that:

> Dyet served upon McKinley an offer of settlement on May 18, 2001, in the amount of $85,000, which was not accepted by McKinley and this matter has now moved to judgment. The [district court] finds that Dyet has recovered an amount greater than her offer of settlement and therefore, Dyet is entitled to interest on the $85,000.00 settlement offer computed from May 18, 2001.

The district court rightly awarded interest to Dyet based on the unaccepted offer of settlement.

I.C. § 12–301 states, "for purposes of this section, 'annual interest' shall mean the rate specified in I.C. § 28–22–104(2)." I.C. § 28–22–104 states:

> The legal rate of interest on money due on the judgment of any competent court or tribunal shall be the rate of five percent (5%) plus the base rate at the time of entry of the judgment ... The payment of interest and principal on each judgment shall be calculated according to a three hundred sixty-five (365) day year.

The district court directed that interest be paid to Dyet on the amount of the settlement offer computed from the date of the offer of settlement, May 18, 2001, but does not calculate this amount payable to Dyet. Both parties agree that I.C. § 12–301 only requires that interest be paid on the $85,000 settlement offer. This is a matter understood by both parties and the district court. No remand is necessary to accomplish the mathematical calculation.

## VI.

## CONCLUSION

The judgment of the district court is affirmed. Both parties have prevailed in part. No costs or attorney fees are allowed.

Chief Justice TROUT, Justices KIDWELL, EISMANN and BURDICK concur.