# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 45425

PETER JACOB NOEL and ALISA ANN
NOEL, husband and wife, individually, and in
their capacity as parents and legal guardians
of SHAELEY NOEL, a minor child,

      Plaintiffs-Respondents-Cross
Appellants,

v.

CITY OF RIGBY,

      Defendant-Appellant-Cross
Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Pocatello, September 2019 Term

Opinion Filed: April 16, 2020

Karel A. Lehrman, Clerk

---

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Jefferson County. Alan C. Stephens, District Judge.

The district court's decisions are <u>affirmed in part</u> and <u>reversed in part</u>. The case is remanded for further proceedings consistent with this opinion.

Hall Angell & Associates, LLP, Idaho Falls, for defendant-appellant-cross respondent City of Rigby. Blake G. Hall argued.

Murray Ziel & Johnston, PLLC, Idaho Falls, for plaintiffs-respondents-cross appellants Peter, Alisa, and Shaeley Noel. Paul D. Ziel argued.

---

STEGNER, Justice.

Shaeley Noel (Shaeley), a nine-year-old girl, was seriously injured while playing on playground equipment owned by the City of Rigby (City) and located in the City's South Park. Shaeley and her parents (collectively the Noels) filed suit in district court alleging willful and wanton conduct by the City in the construction and/or maintenance of its playground equipment. The City claims that the park was closed for winter at the time Shaeley was injured. A jury rendered a verdict in favor of the City when it found that the City did not owe a duty to Shaeley. The Noels filed a motion for a new trial, which the district court granted.

1

The City appeals the district court's decision to grant a new trial, as well as the district court's decisions to deny the City's motion for a directed verdict and the City's motion to exclude the Noels' expert witness.

The Noels cross-appeal, alleging several errors by the district court. These purported errors include: (1) rejection of evidence of Shaeley's unadjusted medical bills, (2) prevention of the Noels' expert witness from testifying regarding the City's purported willful and wanton conduct, (3) allowance of a jury instruction regarding comparative negligence, and (4) admission of evidence regarding the seasonal closure of the park.

For the reasons set out in this opinion, we affirm the following rulings by the district court in which it: (1) denied the City's motion for a directed verdict; (2) granted the Noels' motion for a new trial; (3) allowed the Noels' expert to testify as an expert witness; (4) instructed the jury that willful and wanton conduct could be compared with ordinary negligence; and (5) admitted evidence of the park closure. Additionally, we reverse the following rulings by the district court in which it: (1) prevented the Noels from introducing Shaeley's unadjusted medical bills; and (2) precluded the Noels' expert from testifying that the City engaged in willful and wanton conduct. As a result, we remand the case to the district court for a new trial.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Shaeley is injured at the City's park.

Shaeley was injured on playground equipment owned and operated by the City on February 7, 2015. Previously, the City installed a "tube crawl," which it constructed with surplus fiberglass tubes from the Idaho National Lab. Each end of the tube was placed in an H-shaped frame made of pressure-treated wood. However, neither end of the fiberglass tube was bolted to the H-shaped frames. Instead, one end of the fiberglass tube was flared out in a bell-like shape. The City constructed the tube crawl so that one of the support frames was positioned higher than the other frame. The bell-shaped end of the tube was supposed to be placed on the higher-positioned support frame to prevent the tube from slipping off its supporting structure. Evidence presented at trial demonstrated that the tube had been incorrectly positioned—the bell-shaped end was at the lower end rather than the higher end—when Shaeley was seriously injured. The injury occurred because there was nothing preventing the tube from moving when Shaeley was playing on it.

On the day of the accident, Shaeley went to the park with several other children. Ramiro Hernandez (Hernandez), an adult neighbor, accompanied her and the other children to the park. After arriving at the park, Shaeley and the other children began playing on the playground equipment. Shaeley went to climb inside the lower end of one of the tube crawls. As she was climbing in, the tube crawl slid off its frame because it was untethered, causing the top of the tube to hit Shaeley on the back of her head and neck. The tube pulled her head down, causing her legs to flip up into the air. The force of the fall caused her face to scrape violently against the wood of the support frame. Shaeley's neck was caught between the frame and the fiberglass tube, choking her. Hernandez was able to free Shaeley from the tube crawl and call 911.

As a result of the accident, Shaeley's gum tissue had been ripped off her teeth, and she had multiple lacerations to her upper lip. She had several bruises and scrapes on her face, chin, and neck. She underwent surgery to reattach her gum tissue to her teeth and to suture the cuts on her upper lip. In addition, Shaeley attended physical therapy in order to relieve the resulting pain and stiffness in her neck. She continues to suffer from post-traumatic stress disorder.

At the time of Shaeley's injuries, South Park was purportedly closed for winter. The evidence elicited at trial indicated the City attempted to limit access of motorized vehicles to protect the park's irrigation system from being damaged during winter months. There were signs posted near some of the vehicle entrances to the park that read, "Park closed for season." In addition, the gates to the parking area were locked and closed, preventing vehicles from accessing the parking area. However, other park entrances, particularly those accessible to pedestrians, were neither locked nor impeded access. Anyone could easily enter the park by simply following a walking path. A City employee had also seen several people accessing the park during the seasonal closure. However, the employee took no action to advise the park-goers that they were not allowed to be in the park. In addition, the City never implemented the park's closure through any official action, such as a city ordinance.

## B. Course of proceedings.

The Noels filed a lawsuit in district court alleging that the City had been willful and wanton in its construction and/or maintenance of the playground equipment. After the Noels rested their case, the City moved for a directed verdict, which the district court denied. Following the trial, the jury returned a verdict in favor of the City. The jury found, in response to the first question on the special verdict form, that the City owed no duty to Shaeley. The jury did not

answer any of the remaining questions on the special verdict form as a result of concluding the City did not owe Shaeley a duty.

The Noels filed a motion for a judgment notwithstanding the verdict (JNOV) and a motion for a new trial. The district court denied the motion for JNOV[1] but granted the motion for a new trial. The district court found that the clear weight of the evidence did not support the jury's verdict. The City appeals, alleging the district court erred in granting the Noels a new trial in addition to other purported errors. The Noels cross-appeal, alleging the district court erred on several issues during the proceedings.

## II.  STANDARD OF REVIEW

The standard of review varies for each issue and will be discussed in the relevant subsections below.

## III.  ANALYSIS

**A.      The district court did not err in denying the City's motion for a directed verdict because the Noels presented sufficient evidence for the case to be submitted to the jury.**

The City moved for a directed verdict after the conclusion of the Noels' case. The City argued both that the Noels had not proven the City owed a duty to Shaeley and that the Noels had not proven the City's action had been willful and wanton. The City focused its argument on what the City "knew or should have known" at the time that Shaeley was injured. The district court denied the motion for a directed verdict, stating,

> Frankly, as I see it at this point, we have a -- Mr. Lamoreaux [the City's public works director] testified that the reason the park was closed is because he didn't want people driving on his sprinklers. It had nothing to do with using the park. In fact, the gates were -- the entryway was open to use that stuff. So I don't even think the park was closed, frankly.

> But even if it was closed, I think no sane person could think that if you have a walking gate that's wide open right next to where you would pull up to the place, that you couldn't walk in there. If it's closed, then you have a rope across it or something that says, Closed. I mean, I just don't get it. And so I think that issue is -- yeah, I don't see that as an issue that precludes the plaintiffs at this point in time.

---

[1] The Noels have not appealed the denial of their motion for JNOV.

4

Also, the testimony about these tubes. It looks to me like some guy just had an idea that he'd pick up something cheap for the city that would be kind of fun to use, and he threw it up, and he didn't even put a bolt in it. I don't think it takes a rocket scientist to figure out that you bolt it. I think, in my personal opinion, that's reckless. Now, whether the jury will agree with me, I don't know. But if I were the finder of fact, I'd say the City was reckless in the way they constructed those things. That's my personal opinion, but I'm not the one that's going to find the fact, so. . .

But when you see how I see the facts, you can see why I'm denying your motion. So your motion is denied. I believe there's enough evidence for this to go to the jury. I think it's a stiff burden the plaintiff has, and we'll see how they do.

The City argues that the district court abused its discretion in applying the wrong legal standard. The City contends that the district court focused on whether the City was willful and wanton instead of focusing on what evidence was available to the jury to determine the City owed a duty to Shaeley. However, we hold that there was sufficient evidence regarding both the City's duty to Shaeley and its purportedly willful and wanton conduct to allow the case to be submitted to the jury.

"When reviewing a decision to grant or deny a motion for a directed verdict, this Court applies the same standard the trial court applied when originally ruling on the motion." *Irish v. Hall*, 163 Idaho 603, 607, 416 P.3d 975, 979 (2018) (quoting *Drug Testing Compliance Grp., LLC v. DOT Compliance Serv.*, 161 Idaho 93, 100, 383 P.3d 1263, 1270 (2016)). Therefore, this Court analyzes

> whether there was sufficient evidence to justify submitting the claim to the jury, viewing as true all adverse evidence and drawing every legitimate inference in favor of the party opposing the motion for a directed verdict. This test does not require the evidence be uncontradicted, but only that it be of sufficient quantity and probative value that reasonable minds could conclude that a verdict in favor of the party against whom the motion is made is proper. Where a non-moving party produces sufficient evidence from which reasonable minds could find in its favor, a motion for directed verdict should be denied.

*Id.* (citation omitted).

Here, the district court did not err in denying the City's motion for a directed verdict. The Noels' only cause of action was that the City, as a landowner, was willful and wanton in its construction and/or maintenance of the playground equipment. The City asserted as an affirmative defense that Idaho's Recreational Use statute, Idaho Code section 36-1604, applied. Under that statute, an owner of land or equipment that is used for recreational purposes owes the

5

persons using that land or equipment the same duties it owes to trespassers. *Jacobsen v. City of Rathdrum*, 115 Idaho 266, 270, 766 P.2d 736, 740 (1988); *see* I.C. § 36-1604(d)(2).

Normally, the question of whether a trespasser is known or reasonably anticipated is irrelevant for cases in which Idaho's Recreational Use statute applies. However, the theory upon which the parties tried the case focused on whether Shaeley was a known or reasonably anticipated trespasser. Accordingly, we review the district court's analysis through this lens.

First, the district court did not err in finding that the Noels presented sufficient evidence to justify submitting the claim to the jury concerning whether the City owed Shaeley a duty.[2] The owner of land only owes a duty to a trespasser whose presence on the premises is known or reasonably anticipated. *DeGraff v. Wight*, 130 Idaho 577, 579, 944 P.2d 712, 714 (1997); IDJI 3.19. Here, there was evidence to establish that the City knew or should have known of Shaeley's presence. There was evidence presented that the entryways to the park itself were not closed and that anyone could easily enter the park on foot. Further, jurors heard testimony from several witnesses, including a City employee who stated that he had witnessed people in the park during the closure. In fact, the City employee knew the names of the individuals who had been in the park. In addition, the City employee made no effort to inform the people in the park that it was closed or that it was inappropriate for them to be in the park. Finally, the park's closure was never implemented through any city ordinance. Accordingly, there was more than sufficient evidence to allow reasonable jurors to conclude that the City knew or should have known that people would be in the park at the time that Shaeley was injured.

Second, the district court did not err in finding that the Noels presented sufficient evidence to justify submitting the claim to the jury regarding the City's purported willful and wanton conduct. If the landowner knows or should know of the trespasser's presence, the owner has a duty "to refrain from wilful or wanton acts which might cause injuries." *Jacobsen*, 115 Idaho at 270, 766 P.2d at 740 (quoting *Huyck v. Hecla Mining Co.*, 101 Idaho 299, 301, 612 P.2d

---

[2] We note at the beginning of this analysis that the jury should not have been asked the legal question of whether the City owed a duty to Shaeley. The determination of what duty applies is a legal question for the district court. *See Forbush v. Sagecrest Multi Family Prop. Owners' Assoc.*, 162 Idaho 317, 322, 396 P.3d 1199, 1204 (2017) (citations omitted). While it is possible that the applicable duty might turn on a factual question, which would need to be determined by the jury, the determination of what duty applies under a certain set of facts is a legal question for the district court to determine. *See id.*

6

142, 144 (1980)). Here, the parties requested the Idaho stock jury instruction for willful and wanton conduct.[3] The stock jury instruction defines willful and wanton conduct as

> more than ordinary negligence. The words mean intentional or reckless actions, taken under circumstances where the actor knew or should have known that the actions not only created an unreasonable risk of harm to another, but involved a high degree of probability that such harm would actually result.

IDJI 2.25.

There was sufficient evidence to establish that the City's construction and/or maintenance of the playground equipment was willful and wanton. The evidence elicited at trial demonstrated that the tubes were positioned incorrectly, which allowed the tube to slide off its supporting structure. Further, the fiberglass tubes had never been bolted to the frame. The district court noted that it believed this to be reckless conduct, which under the instruction requested by the parties would constitute willful and wanton conduct. Accordingly, the district court did not err in determining that there was sufficient evidence to submit the case to the jury on the question of whether the City's actions were willful and wanton.

As a result, the district court did not err when it denied the City's motion for a directed verdict because there was sufficient evidence to submit the claim to the jury to determine whether the City knew or reasonably anticipated Shaeley's presence in the park and whether the City's conduct was willful and wanton.

Notably, the City's argument on appeal that the district court erred by focusing on whether the City's conduct was willful and wanton instead of whether the City owed Shaeley a duty misrepresents the argument the City made to the district court below. The City argued *both* that the Noels failed to establish that the City owed Shaeley a duty, and that the City had not been willful and wanton in its construction and/or maintenance of the playground equipment. Further, the district court's analysis (included above) clearly addresses *both* whether the Noels presented sufficient evidence of a duty owed to Shaeley and whether the City acted willfully and wantonly. Therefore, the district court did not err in denying the motion for a directed verdict, and the City's arguments to the contrary are unpersuasive.

---

[3] Although the written jury instructions were not provided in the record on appeal, both counsel referenced the language used in the stock jury instruction for willful and wanton conduct in their closing arguments. We presume pattern jury instructions to be correct. *State v. Mann*, 162 Idaho 36, 43, 394 P.3d 79, 86 (2017) (quoting *McKay v. State*, 148 Idaho 567, 571 n.2, 225 P.3d 700, 704 n.2 (2010)).

**B.** **The district court did not abuse its discretion in granting the Noels' motion for a new trial.**

Following the jury's verdict that the City did not owe Shaeley a duty, the Noels filed a motion for a new trial pursuant to Idaho Rules of Civil Procedure 59(a)(1)(A) and (G). The Noels claimed that they were entitled to a new trial because there was insufficient evidence supporting the jury's verdict that the City did not owe Shaeley a duty. Additionally, the Noels argued that there had been irregularities at the original trial necessitating a new trial because the jury received a sensitive and prejudicial document that had previously been ordered to be redacted.

The district court ultimately granted a new trial on the basis that there was insufficient evidence supporting the jury's verdict. The district court relied on evidence presented at trial that several people had been seen in the park during its closure. Specifically, a City employee had seen several people in the park and knew them by name. Thus, the district court concluded that the jury's verdict was against the clear weight of the evidence. However, the district court denied a new trial on the basis that there had been irregularities during the original trial.

This Court reviews a district court's decision to grant a new trial under an abuse of discretion standard. *Litke v. Munkhoff*, 163 Idaho 627, 632, 417 P.3d 224, 229 (2018) (citation omitted). When this Court reviews an alleged abuse of discretion by a district court, it analyzes whether the district court "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018) (citing *Hull v. Giesler*, 163 Idaho 247, 250, 409 P.3d 827, 830 (2018)).

Idaho Rule of Civil Procedure 59(a)(1)(G) allows the district court to grant a new trial based on the "insufficiency of the evidence to justify the verdict or other decision, or that it is against the law[.]" "In ruling on the motion, the trial judge must independently assess the credibility of the witnesses." *Lanham v. Idaho Power Co.*, 130 Idaho 486, 498, 943 P.2d 912, 924 (1997) (citing *Quick v. Crane*, 111 Idaho 759, 766, 727 P.2d 1187, 1194 (1986)). "The trial judge is not required to construe the evidence in favor of the jury verdict." *Id.* (citing *Quick*, 111 Idaho at 767, 727 P.2d at 1195). In order to grant a new trial, the district court must apply a two-prong test: "(1) whether the verdict is against his or her view of the clear weight of the evidence; and (2) whether a new trial would produce a different result." *Ellefson v. Palmer*, 162 Idaho 393,

396, 397 P.3d 1152, 1155 (2017) (quoting *Hoffer v. Shappard*, 160 Idaho 868, 877, 380 P.3d 681, 690 (2016)). "The trial court is given broad discretion in determining whether to grant a motion for a new trial, and the 'trial judge may set aside the verdict even though there is substantial evidence to support it.'" *Id.* (quoting *Sheridan v. St. Luke's Reg'l Med. Ctr.*, 135 Idaho 775, 779–80, 25 P.3d 88, 92–93 (2001)).

The district court did not abuse its discretion in granting a new trial. First, the district court recognized that granting a new trial was within its discretion. Next, the district court correctly recognized that it had an obligation to weigh the evidence and only grant a new trial if the verdict was not in accordance with its assessment of the clear weight of the evidence. Further, it outlined the two-prong test that it was required to apply in order to grant a new trial. Therefore, the district court acted consistently with the legal standards applicable to the specific choices available to it and acted within the boundaries of its discretion.

Finally, the district court exercised reason in making its decision. In its analysis, the district court stated,

> [t]he standard of care in Idaho for persons using public parks is the standard of care owed to a trespasser—duty to avoid harming through willful [and] wanton conduct if the trespasser's presence is known or reasonably anticipated. It is undisputed that the footpaths into Rigby South Park were not closed by any means at the time of the incident in question. It was also established at trial that City employees were aware that people had entered the park during the winter closure. In fact, the City employees who testified to having seen people in the park knew the names of the individuals who were inside the park and using it. Testimony was also given at trial that no ordinance was passed that officially closed the park during the winter months and that the primary reason for closing the vehicle entrance was to prevent people from driving vehicles in the parking lot, not to prevent entrance into the park altogether.
>
> Where it is undisputed that City employees were aware that people were entering the park and that it is also undisputed that the City did nothing to prevent people from entering the park on foot, the Court finds that Plaintiff Shaeley's presence in the park could have been reasonably anticipated, and that therefore the jury's verdict was against the clear weight of the evidence.

The district court's analysis demonstrates that it considered and weighed the evidence presented at trial and the testimony from the witnesses. In weighing the evidence, the district court articulated its reasons for finding that the clear weight of the evidence was against the jury's verdict. Therefore, the district court exercised reason in granting the Noels' motion for a new trial.

The City contends that the district court erred because it failed to determine the credibility of witnesses in its decision. Although the district court did not make an explicit finding of the witnesses' credibility, the district court presumably found the witnesses' testimony to be credible because it relied on the witnesses' testimony to reach its decision. Therefore, the City's argument that the district court erred is unfounded as the district court is not required to make an explicit finding of credibility.

Next, the City contends that the district court may only grant a new trial when it concludes that the jury relied on witness testimony that was "entirely worthless." The City relies on this Court's decision in *Pocatello Auto Color, Inc. v. Akzo Coatings, Inc.*, 127 Idaho 41, 46, 896 P.2d 949, 954 (1995), for this proposition. However, this is the standard applied by this Court on review, not the standard applied by the district court when it makes its decision. *See id.* In *Pocatello Auto Color, Inc.*, this Court held that in order to overturn the district court's denial of a motion for a new trial, *this Court* would have to conclude that the testimony relied on *by the district court* was "entirely worthless." *Id.* The district court was not required to apply this test.

Finally, the City argues that the district court abused its discretion in its application of the second prong of the *Ellefson* test. In *Blizzard v. Lundeby*, 156 Idaho 204, 208, 322 P.3d 286, 290 (2014), this Court held that "the judge must consider whether it is more probable than not that a different or more favorable result, *as rendered by the questions the jury answered and only those questions the jury answered*, would be obtained by a new trial." *Id.* (italics added). In *Blizzard*, on a special verdict form that separated the questions of negligence and causation, the jury returned a verdict in favor of the defendant only answering the one question of whether the defendant had acted negligently. *Id.* at 205, 322 P.3d at 287. In ruling on the plaintiffs' motion for a new trial, the district court found that the clear weight of the evidence was against the jury's finding that the defendant was not negligent. *Id.* However, the district court denied the motion for a new trial because it could not say whether the plaintiffs would prevail on the issues of causation. *Id.* at 206, 322 P.3d at 288. This Court reversed the district court, holding that the district court could only consider the question the jury actually answered. *Id.* at 208, 322 P.3d at 290.

Although not clearly articulated in *Blizzard*, a logical outgrowth exists for cases involving a special verdict form in which the jury only answers *one* question. In those cases, if the judge finds that the clear weight of the evidence is against the jury's *only* finding, then,

10

necessarily, a new trial would likely produce a different result on that *particular finding*. Here, where the district court found that the clear weight of the evidence was against the jury's finding that the City did not owe a duty to Shaeley, the outcome of that single question would likely be different on retrial. Although the district court went further to address the City's purportedly willful and wanton conduct, it is superfluous and not an abuse of discretion. Accordingly, this Court affirms the district court's order granting a new trial.

Because we affirm the district court's order granting the Noels' motion for a new trial, we do not reach the alternative ground for new trial based on irregularities at trial. *See* I.R.C.P. 59(a)(1)(A).

**C. The district court did not abuse its discretion in allowing the Noels' expert witness to testify; however, it did abuse its discretion in limiting the scope of his testimony.**

The Noels retained Scott Burton (Burton) as an expert witness. Burton holds himself out to be an expert in playground safety and is a certified playground safety inspector. He testified that the tube crawl in question fell below several national standards. The City moved to strike Burton's expert testimony, arguing that Burton was not qualified as an expert under Idaho Rule of Evidence 702 because he was not familiar with the standard of care in Idaho. Relatedly, the City argued that the standards Burton relied on have not been adopted in Idaho.

The district court made two rulings regarding Burton's testimony, both of which are before this Court on appeal. The City appeals from the district court's ruling allowing Burton to testify as an expert witness in this case. The Noels appeal from the district court's ruling that Burton could not testify regarding whether the City was willful and wanton because that was ultimately a question for the jury.

1. The district court did not abuse its discretion in allowing Burton to testify as an expert witness.

The admissibility of expert testimony is a matter of discretion. *Athay v. Stacey*, 142 Idaho 360, 366, 128 P.3d 897, 903 (2005) (citing *Swallow v. Emergency Med. of Idaho, P.A.*, 138 Idaho 589, 592, 67 P.3d 68, 71 (2003)). When this Court reviews an alleged abuse of discretion by a district court, it analyzes whether the district court: "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg*, 163 Idaho at 863, 421 P.3d at 194 (citation omitted).

Idaho Rule of Evidence 702 governs the admissibility of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.

I.R.E. 702. "An expert's opinion is also inadmissible if it concerns conclusions or opinions that the average juror would be qualified to draw from the facts utilizing the juror's common sense and normal experience." *Athay*, 142 Idaho at 367, 128 P.3d at 904 (citation omitted).

Here, the City contends the district court erred in allowing Burton to testify. For the reasons set out, we hold the district court did not abuse its discretion by allowing Burton to testify as an expert witness. Burton is an expert in this area. Burton's testimony would clearly assist the jury by informing the members of the jury about the general standards regarding the construction and/or maintenance of playgrounds and how the City's construction and/or maintenance of its playground deviated from those standards.

The City contends that Burton's testimony would not have been helpful to a trier of fact because Burton based his opinion on standards that had not been adopted in Idaho and Burton was not familiar with the standards that Idaho uses. However, this appears to be an effort by the City to engraft the "community" standard used in medical malpractice cases onto an ordinary negligence action.[4] This is not the standard. There is no requirement in I.R.E. 702 or general case law that requires that the standards be adopted in Idaho before expert testimony will be allowed.

The cases cited by the City for the proposition that there must be evidence that a standard or guideline has been adopted before an expert can testify regarding those standards concerned only cases involving negligence *per se*. *See, e.g.*, *Sanchez v. Galey*, 112 Idaho 609, 617, 733 P.2d 1234, 1242 (1986). A plaintiff alleging negligence *per se* must present evidence that Idaho has adopted the standard, regulation, or local ordinance in order for the regulation, standard, or ordinance to establish the relevant standard of care. However, this is not required in a negligence action as is presented in this case. While Burton would have to admit that the standards to which he testified had never been adopted in Idaho—and the jury could use that information as it saw fit—Burton could establish the standard of care by demonstrating through his expert opinion what the City should have known of the national standards as the creators and owners of the

---

[4] Idaho's legislature has modified the common law tort of medical malpractice and imposed the requirement that a plaintiff's expert be familiar with the standard of care relevant to the community in which the purported malpractice occurred. *See* I.C. §§ 6-1012, 6-1013. There is no corresponding statutory "community" standard applicable in this case.

playground equipment. If the City disregarded those national standards, Burton's testimony could shed light on whether the City's actions were willful and wanton. Accordingly, the district court did not abuse its discretion in allowing Burton to testify as an expert witness.

2. <u>The district court abused its discretion in limiting the scope of Burton's expert testimony regarding willful and wanton conduct.</u>

The district court limited Burton's testimony by preventing him from expressing his opinion that the City was willful and wanton, reasoning that it was a question for the jury. The Noels argue that I.R.E. 702 allows an expert witness to give his opinion if it will be helpful to the trier of fact, even if it relates to an ultimate issue.

To be admissible, the expert's testimony must assist the trier of fact to understand the evidence or to determine a fact at issue in the case. I.R.E. 702. An expert's testimony should not be rejected merely because it "embraces an ultimate issue." I.R.E. 704. If the opinion would otherwise be admissible, then the expert should be allowed to voice it. *See id.* It appears that the only reason the district court did not allow this evidence was that it believed the question to intrude on the province of the jury. Therefore, if the expert was qualified to testify about the ultimate issue, the district court abused its discretion by excluding the testimony.

Here, Burton familiarized himself with the willful and wanton standard in Idaho, both for this case and one on which he had previously worked. He provided the definition of willful and wanton and testified that he understood its meaning. Accordingly, his opinion regarding whether the City's construction and/or maintenance of the playground equipment rose to the level of willful and wanton conduct would assist the jury in determining that issue of fact. As a result, the district court erred by limiting the scope of Burton's testimony and not allowing Burton to testify as to whether the City was willful and wanton in its construction and/or maintenance of the playground equipment.

**D. The district court erred in granting the City's motion in limine to prevent the Noels from introducing evidence of Shaeley's unadjusted medical bills.**

Prior to trial, the City filed a motion in limine to prohibit the Noels from presenting Shaeley's medical expenses unadjusted by any Medicaid write-offs. The Noels objected and argued that plaintiffs are allowed to present unadjusted medical bills and any reduction occurs *after* a jury awards damages. The Noels base their argument on *Dyet v. McKinley*, 139 Idaho 526, 529, 81 P.3d 1236, 1239 (2003), *abrogated on other grounds by Verska v. Saint Alphonsus*

*Reg'l Med. Ctr.*, 151 Idaho 889, 895, 265 P.3d 502, 508 (2011). The district court ruled that the jury should only see the bills that were actually paid by the Noels.

During the trial, the Noels did not present any evidence of medical bills. The Noels' attorney indicated that he only intended to ask for pain and suffering given the district court's ruling that the Noels could only present evidence of the unadjusted medical bills. The Noels appeal from the district court's decision preventing them from presenting Shaeley's unadjusted medical bills. The Noels argue that the district court misapplied *Dyet* and Idaho Code section 6-1606. The City argues that the issue has not been preserved on appeal.

    1.  The issue regarding the unadjusted medical bills has been preserved.

There are three general rules regarding the preservation of an issue presented in a motion in limine. First, the denial of a motion in limine generally preserves an issue for appeal. "[I]f the motion in limine is made, and the trial court unqualifiedly rules on the admissibility or inadmissibility of the evidence prior to trial, no further objection at trial is required in order to preserve the issue for appeal." *State v. Hester*, 114 Idaho 688, 700, 760 P.2d 27, 39 (1988) (italics removed). Second, when the district court defers ruling on an evidentiary objection made in a motion in limine, the objection must be made again at trial to be preserved. *Id.* Third, when a district court grants a pretrial motion in limine finding evidence to be inadmissible, the litigant who has made a motion in limine requesting an advance ruling on the admissibility of evidence must continue to assert an objection if the evidence is offered at trial despite the prior ruling of inadmissibility. *Id.*

Here, the first rule is applicable, and therefore the issue has been preserved. The City filed a pretrial motion in limine to preclude the Noels from presenting evidence of Shaeley's unadjusted medical bills. The district court unequivocally granted the motion, preventing the Noels from presenting the unadjusted medical bills. There was no obligation on the part of the Noels to keep asserting the right to introduce the unadjusted medical bills. Therefore, the issue has been preserved and will be addressed on appeal.

    2.  The district court erred by not allowing the Noels to present evidence of the unadjusted medical bills.

As a preliminary matter, we must determine whether Medicaid write-offs are "collateral sources" so as to trigger the application of Idaho Code section 6-1606. That section provides that "collateral sources shall not include benefits paid under federal programs which by law must seek subrogation[.]" I.C. § 6-1606. While this Court has never addressed Medic*aid* write-offs, it

14

has answered the question in regard to Medi*care write*-offs. *Dyet*, 139 Idaho at 529, 81 P.3d at 1239. In *Dyet*, this Court held that while Medicare is technically not a collateral source, it is best treated as a collateral source because doing so helps prevent the danger of prejudice and prevents double recovery. *Id.* Accordingly, Medicaid write-offs should be treated the same as Medicare write-offs. Therefore, under *Dyet*, Idaho Code section 6-1606 applies.

Idaho Code section 6-1606 prohibits double recoveries from collateral sources. That statute provides,

> a judgment may be entered for the claimant only for damages which exceed amounts received by the claimant from collateral sources as compensation for the personal injury or property damage[.] . . . For the purposes of this section, collateral sources shall not include benefits paid under federal programs . . . . *Evidence of payment by collateral sources is admissible to the court after the finder of fact has rendered an award.*

I.C. § 6-1606 (italics added).

This Court recently held that medical bills should be presented to the jury in the amount invoiced by the care provider, not the amounts after Medicare write-offs were applied. *Eldridge v. West*, 166 Idaho 303, 314, 458 P.3d 172, 183 (2020). This Court reasoned that the plain language of Idaho Code section 6-1606 unambiguously states that evidence of a collateral source is to be considered by the court *after* the factfinder has rendered an award. *Id.* Then, the "award shall be reduced by the court to the extent the award includes compensation for damages which have been compensated independently from collateral sources." *Id.*; *see also* I.C. § 6-1606. It is only possible to give effect to the statute as written if the unadjusted medical bills are *first* presented to the jury. As a result, the district court erred in granting the City's motion in limine to exclude the unadjusted medical bills.

### E. The district court did not err in instructing the jury that it should compare ordinary negligence with willful and wanton conduct.

At trial, the City requested that the jury be instructed that negligence by Shaeley's parents[5] and Hernandez contributed to the injuries Shaeley suffered. The Noels filed a motion in limine to exclude evidence or arguments regarding comparative negligence. They argued that comparative negligence is not a defense when a defendant acts willfully and wantonly. The

---

[5] It is not clear from the record on what basis the City is alleging that Alisa Noel was negligent in her supervision of Shaeley. Alisa was at work at the time Shaeley went to the park and was injured. There is nothing in the record to suggest Alisa participated in the decision to allow Shaeley to visit the park.

district court ruled that it would instruct the jury regarding comparative negligence and would include an interrogatory on the special verdict form that allowed the jury to allocate percentages of responsibility between Shaeley's parents, Hernandez, and the City.

"The propriety of jury instructions is a question over which this Court exercises free review." *Herrett v. St. Luke's Magic Valley Reg'l Med. Ctr.*, 164 Idaho 129, 132, 426 P.3d 480, 483 (2018) (quoting *Ballard v. Kerr*, 160 Idaho 674, 702, 378 P.3d 464, 492 (2016)). "If the instructions fairly and adequately present the issues and state the law, no reversible error is committed." *Id.* at 133, 426 P.3d at 484 (quotation omitted). Whether the jury instruction appropriately stated the law requires this Court to engage in statutory interpretation. This Court has free review over the interpretation of a statute. *Carrillo v. Boise Tire Co.*, 152 Idaho 741, 748, 274 P.3d 1256, 1263 (2012) (citation omitted). When this Court engages in statutory interpretation, it applies the following principles:

> The objective of statutory interpretation is to derive the intent of the legislative body that adopted the act. Statutory interpretation begins with the literal language of the statute. Provisions should not be read in isolation, but must be interpreted in the context of the entire document. The statute should be considered as a whole, and words should be given their plain, usual, and ordinary meanings. It should be noted that the Court must give effect to all the words and provisions of the statute so that none will be void, superfluous, or redundant. When the statutory language is unambiguous, the clearly expressed intent of the legislative body must be given effect, and the Court need not consider rules of statutory construction.

*Estate of Stahl v. Idaho State Tax Comm'n*, 162 Idaho 558, 562, 401 P.3d 136, 140 (2017) (quoting *State v. Schulz*, 151 Idaho 863, 866, 264 P.3d 970, 973 (2011)).

Here, the relevant statutory provision governing this issue is Idaho Code section 6-801. That statute abrogated the common law doctrine of contributory negligence. I.C. § 6-801. The statute provides:

> Contributory negligence or comparative responsibility shall not bar recovery in an action by any person or his legal representative to recover damages for negligence, gross negligence or comparative responsibility resulting in death or in injury to person or property, if such negligence or comparative responsibility was not as great as the negligence, gross negligence or comparative responsibility of the person against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of negligence or comparative responsibility attributable to the person recovering.

16

*Id.* In other words, as long as the plaintiff is less than fifty percent responsible for her injuries, the plaintiff may recover. However, her recovery will be reduced in proportion to her responsibility for the damages.

Upon an initial reading, it is unclear whether Idaho Code section 6-801 applies when a defendant acted willfully and wantonly. The statute repeatedly uses the phrase "negligence, gross negligence or comparative responsibility[.]" *See* I.C. § 6-801. Negligence and gross negligence are well-defined in Idaho's stock jury instructions. *See* IDJI 2.20 (definition of negligence); IDJI 2.24 (definition of gross negligence). However, "comparative responsibility" is not well-defined.

This Court often turns to dictionary definitions "[t]o ascertain the ordinary meaning of an undefined term in a statute[.]" *Arnold v. City of Stanley*, 158 Idaho 218, 221, 345 P.3d 1008, 1011 (2015) (citing *Hap Taylor & Sons, Inc. v. Summerwind Partners, LLC*, 157 Idaho 600, 614, 338 P.3d 1204, 1218 (2014)). Black's Law Dictionary defines "comparative responsibility" as "[t]he apportionment of liability between a tortious wrongdoer and a plaintiff whose own negligence was also a cause of the injury in question." Black's Law Dictionary (11th ed. 2019). Further, this Court has favorably cited case law that would allow comparison of "the causal conduct of each party, regardless of its label." *Vannoy v. Uniroyal Tire Co.*, 111 Idaho 536, 542, 726 P.2d 648, 654 (1985) (quoting *Sun Valley Airlines, Inc. v. Avco-Lycoming Corp.*, 411 F. Supp. 598, 603 n.5 (D. Idaho 1976)) (explaining that comparative responsibility applies even in strict liability claims). As "comparative responsibility" is a broad term, the inclusion of the term by the legislature indicates that it intended that reckless conduct be compared with ordinary negligence.[6]

For the purposes of this case, we must determine whether an action to recover for willful and wanton conduct may be compared with simple negligence under Idaho Code section 6-801. Here, the parties requested the stock jury instruction for wanton and willful conduct.

> The words "willful and wanton" . . . mean more than ordinary negligence.
> The words mean *intentional or reckless* actions, taken under circumstances where

---

[6] We do not answer the question about whether intentional actions, the other subset of willful and wanton conduct, may be compared under Idaho Code section 6-801. Intentional conduct appears to be something distinct from reckless conduct, but as the City's conduct here would not rise to the level of intentional conduct, we need not address the issue. We recognize that the Idaho Court of Appeals addressed a similar question in *Rausch v. Pocatello Lumber Company, Inc.*, 135 Idaho 80, 88, 14 P.3d 1074, 1082 (Ct. App. 2000). The Court of Appeals, in interpreting Idaho Code 6-803(3), found that the statute allowed for an allocation of fault between a negligent tortfeasor and an intentional tortfeasor. *Id.* However, as the statutory language differs, we do not find it persuasive in interpreting section 6-801.

the actor knew or should have known that the actions not only created an unreasonable risk of harm to another, but involved a high degree of probability that such harm would actually result.

IDJI 2.25 (italics added). This Court has previously held that willful and wanton conduct is a degree of negligence. *Carrillo*, 152 Idaho at 751, 274 P.3d at 1266. However, willful and wanton conduct is better recognized as having two clear types of conduct: reckless conduct and intentional conduct. When reviewing the complaint filed by the Noels, it is clear that they alleged that the City had engaged in reckless, rather than intentional, conduct. The Noels' complaint states, "[t]he City of Rigby was willful and wanton in its conduct, where it maintained children's playground equipment in a manner that produced a high degree of probability that harm or great bodily injury would result."

As reckless conduct is recognized as a degree of negligence, *see Carrillo*, 152 Idaho at 751, 274 P.3d at 1266, Idaho Code section 6-801 allows reckless conduct by the defendant to be compared with the negligent conduct of the plaintiff. Accordingly, as reckless conduct is within the definition of willful and wanton conduct, willful and wanton conduct may be compared with ordinary negligence.

Accordingly, we affirm the district court's decision regarding comparative negligence. On remand, if the City is determined to have engaged in reckless (a subset of wanton and willful) conduct, then the comparative negligence of Peter Noel and Hernandez may be compared with the willful and wanton conduct of the City.[7] If the jury were to answer that the conduct was reckless, then the district court may include an instruction regarding comparative responsibility.

F.    **Because the parties tried the case based on whether Shaeley was a known or reasonably anticipated trespasser, the district court did not abuse its discretion in admitting the evidence of the seasonal park closure.**

The Noels filed a motion in limine to exclude evidence of the park's seasonal closure. The Noels argue that because all people who enter parks are considered trespassers under Idaho Code section 36-1604, any evidence that the park was closed is irrelevant and would only

_____

[7] Before parties are placed on jury verdict forms, "there must be a showing that the requisite elements of a cause of action against them have been presented at trial." *Van Brunt v. Stoddard*, 136 Idaho 681, 687, 39 P.3d 621, 627 (2001) (citation omitted); *see also* I.C. § 6-802. "The question of whether to include additional parties on the verdict form is resolved not by inquiring whether a judgment would or could be rendered against that person, but whether his conduct or his product caused or contributed to the accident and injuries." *Munns v. Swift Transp. Co.*, 138 Idaho 108, 112, 58 P.3d 92, 96 (2002) (citation omitted).

confuse the jury.[8] The City argues that the evidence would help establish whether the City knew or should have known of Shaeley's presence in the park. The district court allowed the evidence to be presented to the jury.

"When reviewing the trial court's evidentiary rulings, this Court applies an abuse of discretion standard." *Herrett*, 164 Idaho at 136, 426 P.3d at 487 (quoting *Edmunds v. Kraner*, 142 Idaho 867, 871, 136 P.3d 338, 342 (2006)). When this Court reviews an alleged abuse of discretion by a district court, it analyzes whether the trial court: "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg*, 163 Idaho at 863, 421 P.3d at 194 (citing *Hull*, 163 Idaho at 250, 409 P.3d at 830).

The district court did not abuse its discretion in admitting the evidence of the park closure. The district court recognized that the evidence of the seasonal closure was relevant to determine whether Shaeley was a known or reasonably anticipated trespasser.[9] As argued by the parties below, the owner of land only owes a duty to a trespasser whose presence on the premises is known or reasonably anticipated. *DeGraff*, 130 Idaho at 579, 944 P.2d at 714; IDJI 3.19. Accordingly, evidence of a seasonal park closure goes directly to whether the City knew or should reasonably have anticipated that Shaeley would be at the playground. Therefore, the district court did not abuse its discretion in admitting this evidence.

## G.     Neither party is entitled to attorney fees.

Both the Noels and the City contend that they are entitled to attorney fees under Idaho Code sections 12-121 and 6-918A. Because this case is governed by the Idaho Tort Claims Act, Idaho Code section 6-918A is the exclusive statute to award attorney fees. *D.A.F. v. Lieteau*, 166 Idaho 124, 131, 456 P.3d 193, 200 (2019). Accordingly, we decline to award either party attorney fees under Idaho Code section 12-121.

Idaho Code section 6-918A allows for an award of attorney fees if the party "was guilty of bad faith in the commencement, conduct, maintenance or defense of the action." The City

---

[8] This argument by the Noels is the closest that the parties come to articulating the proper analysis under Idaho's Recreational Use statute. However, as the parties tried the case on whether Shaeley was a known or reasonably anticipated trespasser, we review the evidence as it relates to that theory.
[9] Evidence regarding whether the park was closed may also be relevant to determining whether the Recreational Use statute is applicable.

argues that the Noels acted in bad faith because there was no evidentiary basis to support the motion for a new trial. Given our determination that the district court did not err in granting the Noels' motion for a new trial, the Noels did not act in bad faith. Accordingly, we decline to award the City attorney fees under section 6-918A.

The Noels argue that the City acted in bad faith. However, there are legitimate questions as to whether the district court abused its discretion in the rulings that the City challenged. Consequently, we decline to award attorney fees to the Noels under Idaho Code section 6-918A.

## IV. CONCLUSION

For the foregoing reasons, we affirm the following rulings by the district court in which it: (1) denied the City's motion for a directed verdict; (2) granted the Noels' motion for a new trial; (3) allowed Burton to testify as an expert witness; (4) allowed willful and wanton conduct to be compared with ordinary negligence; and (5) allowed evidence of the park closure. This Court reverses the following rulings by the district court in which it: (1) prevented the Noels from admitting Shaeley's unadjusted medical bills; and (2) precluded Burton from testifying that the City engaged in willful and wanton conduct. Neither party is awarded attorney fees or costs.

Chief Justice BURDICK, Justices BRODY, BEVAN and MOELLER CONCUR.